THE STATE OF DELAWARE upon the relation of THE NATIONAL BANK OF DELAWARE AT WILMINGTON, a corporation existing under the laws of the United States of America, *vs*. THE JESSUP AND MOORE PAPER COMPANY, a corporation existing under the laws of the State of Delaware.

1.  CORPORATIONS—BOOKS AND PAPERS—EXAMINATION—RIGHTS OF STOCK-HOLDER—MOTIVE.

The bad faith and improper motive of a stockholder in desiring examination of the corporation's books and papers, that the stockholder might institute harassing and annoying litigation over the corporation's affairs, to compel the corporation to purchase the stockholder's shares as the price of peace, will deprive such stockholder of the right to compel the corporation to permit such examination.

2.  MANDAMUS—RETURN—FACTS OR CONCLUSIONS—BAD FAITH.

General allegation that a stockholder, in proceedings to compel an examination of the corporation's books and papers, was actuated by an improper motive to obtain information that would enable him to harass the corporation, and that the application was not in good faith, without an allegation of additional facts from which the court might find as a fact that bad faith and an unlawful purpose existed, is insufficient to prevent the grant of such relief.

3.  MANDAMUS—RETURN—ALLEGATIONS—"CONCERTED ACTION".

Where a corporation, in proceedings by a stockholder to compel an examination of books and papers, alleged that the proceeding was the result of concerted action on the part of relator and others similarly situated, the term "concerted action" should be construed to mean action planned, arranged, adjusted, agreed on, and settled between parties acting together in pursuance of some design or in accordance with some scheme, and, being alleged to show bad faith and improper motive, was a fact which could not be inferred, but must be directly charged in the return.

4. CORPORATIONS—EXAMINATION OF BOOKS AND PAPERS—STOCKHOLDER'S RIGHT—BAD FAITH.

In proceedings to compel a corporation to submit books and papers to the examination of a stockholder, the fact that relator failed to vote at a stockholders' meeting at which it was represented, and also failed to attend by representative another stockholders' meeting at which the corporation's general ledger, one of the books sought to be examined, was opened to the inspection of the stockholders present, and neglected the corporation's efforts to permit an examination in partial compliance, with a court opinion, did not show that relator's application was made in bad faith or for an improper motive.

5. MANDAMUS—PETITION—ALTERNATIVE WRIT—RETURN—REQUISITES.

Where the petition for mandamus discloses facts establishing relator's legal right to the remedy, and an alternative writ issues thereon, defendant's return must either show that it has obeyed the command of the writ, or, in the alternative, deny the averments of the petition, and show that relator is without right to the remedy; and if it is insufficient for this purpose, the averments of the petition are taken as true, and a peremptory writ issues.

6. MANDAMUS—BOOKS AND PAPERS—EXAMINATION—MANDAMUS—ALTERNATIVE WRIT—COMPLIANCE.

Where an alternative writ of mandamus required a corporation to submit books and papers to a stockholder's examination, a return, alleging that respondent had offered to exhibit to relator, "for any proper use" it could make of them, respondent's statements, books, and reports, showing in detail its assets and liabilities, and the value and amount thereof, and would produce to relator and furnish any and all information in the books and records "essential and sufficient" to furnish relator the information it sought, was insufficient; it having refused to submit for inspection the specific statements and books mentioned in the writ, and the offer being equivocal as to the purpose for which an examination would be allowed.

(*October* 4, 1913.)

Judges WOOLLEY and RICE sitting.

*Robert H. Richards* for the relator.

*Saulsbury* and *Morris* for the respondent.

Superior Court, New Castle County, May Term, 1913.

MANDAMUS (No. 129, September Term, 1908), on relation of the National Bank of Delaware at Wilmington, to compel the Jessup and Moore Paper Company to permit an inspection of books and papers by relator as a stockholder. On motion to quash the amended return to an alternative writ, on the ground that the denials contained therein were insufficient to deprive relator of its remedy and that the charges of bad faith affecting the right of the relator were not sustained. Motion granted.

(See, also, 2 *Boyce* 116, 78 *Atl.* 295.)

WOOLLEY, J., delivering the opinion of the court:

The petition of the relator, the National Bank of Delaware, discloses among other things that it is a national bank; that in the course of its business of lending money, it made loans upon two notes aggregating the sum of thirteen thousand five hundred dollars, secured by two hundred and seventy-five shares of the capital stock of the defendant company, of the aggregate par value of twenty-seven thousand five hundred dollars; that defaults were made in the payment of the notes, and the shares of stock were sold, and purchased by the relator, pursuant to the authority contained in the contracts of pledge embraced in the notes. Having thus become the owner of the shares of stock, the relator avers that it discovered that there was no market for the shares, and that it has no knowledge of their value, and is unable to ascertain from the defendant such facts as are necessary to enable it, or others, to determine the same; that information from the defendant as to the value of the shares is necessary to enable the relator to respond to inquiries of national bank examiners respecting their value, in order that a true condition of the bank may from time to time be officially ascertained, and to satisfy contemplated purchasers thereof in its efforts to sell and dispose of the same. Further averring that it wishes to inspect the books and papers of the defendant company, not from mere idle curiosity, nor for speculative or any improper purposes, but solely for the purposes indicated, it prays for a rule upon the defendant to show cause why a writ of peremptory mandamus shall not issue against it, commanding it to permit the relator to inspect and make copies of certain books and papers, which, by reason of the ruling of this court, in another case, are now restricted to:

"(e)   The ledgers and other books showing the amount of business done by the (defendant) company from the first day of August, 1906, up to the present time.

"(f)   The statements submitted to the directors showing the business done by the (defendant) company, its profits and losses, and assets and liabilities during each period of six months from the said first day of August, A. D. 1905, until this time."

The rule to show cause issued, and upon its return was

made absolute, and an alternative writ of mandamus was awarded to which, after various amendments, the defendant filed an amended return, which the ·relator now moves to quash, upon the ground that the denials made by the defendant are not sufficient to deprive the relator of its remedy, that the alleged compliance with the mandate of the writ is no compliance and that the charges of bad faith affecting the right of the relator to the inspection sought, are not properly made.

The answer made by the return is threefold in nature. It first charges the relator with actions and motives which, if true, would deprive it of the right to obtain the information it seeks; second, it avers a part compliance with the mandate of the writ, and, third, it excuses itself for noncompliance with other parts thereof.

*First.* In the case of *State ex rel. Brumley v. Jessup and Moore Paper Company*, 1 *Boyce* 379, 77 *Atl.* 16, 30 *L. R. A. (N. S.)* 290, the Supreme Court, in passing upon a question identical in principle and similar in fact with the one now under consideration, was cautious to limit the right of inspection of corporate books by a stockholder to one who discloses the good faith of his application and the lawfulness of his purpose, and to withhold the right from one whose motive is not good and whose purpose is not proper. As affecting this requisite qualification of the relator for the relief it seeks, the defendant in its amended return charges that "the allegations in the said petition (respecting good faith and the purposes for which the information is sought) are not made in good faith, but are mere pretenses and made to involve the defendant in harrassing and annoying litigation concerning its business and affairs to such an extent that it, or persons heavily interested in its welfare as stockholders, may be compelled to purchase from the petitioner the shares of stock of the defendant company held by it as the price of peace; that throughout the conduct and pendency of the litigation initiated by the filing of the petition in this cause, the petitioner has shown, as herein set out, bad faith and a lack of any genuine desire to obtain the information, or any part thereof, which it alleges it seeks through the order of this honorable court, and has failed, refused,

and neglected from the first, although alleging the desire so to do, to obtain any information which has always been open to it in a proper and reasonable way and at reasonable times."

[1, 2]   Bad faith and improper motive of the kind alleged, would, if true, deprive the relator of any right to inspect the books of the corporation of which it is a stockholder; but such an allegation of bad faith and improper motive, without something to show how and in what respect it exists, is alone insufficient as a denial of the plaintiff's good faith and proper motive, just as a bald averment of the relator as to its good faith and proper purpose, without something to show the real or probable existence of the one and the other, would be an insufficient averment in the petition upon which to ask for and obtain the inspection of corporate books.

The defendant does, however, give reasons in support of its charge that the relator seeks the inspection of the defendant's books in bad faith and for unlawful purposes.   One that does not appear in the return, except by inferential allusion in paragraph 13, is one that was so earnestly urged at the argument that brief attention may be given it here.   It is that this action is one of a number of like actions concertedly brought for purposes other than those declared in the petition, that the court knows of the other actions and that those actions with this one show the motive and purpose of the relator in this action to be unlawful and improper.   While it is a matter of record in this and the other cases, of which the *Brumley case* is the only one adjudicated, that the common source of the difficulties of this and the other relators was the business failure and bankruptcy of one with whose obligations various shares of this defendant company were pledged, and while the petitions in this and in the *Brumley case* disclose that the relator in each case was compelled to protect the loans by them respectively made, by selling and purchasing the shares of stock pledged to secure the payment of the same, and in this way found themselves in similar positions out of which they endeavored to extricate themselves in similar ways, there is nothing in the petitions and returns of the two cases, that shows any relation of any character between the relators.   Proceedings at law that are insti-

tuted contemporaneously, that is, proceedings that happen to be instituted at or about the same time by different parties, seeking for themselves similar relief, cannot be considered to have been instituted as a result of concerted action, merely because of the concurrence of events and the similarity of procedures.

[3] To charge that this is one of several suits concertedly instituted to annoy and harass the defendant, something more than the bald charge to that effect and the concurrent institution of the suits, which might or might not have been prearranged and agreed upon, must be shown by the pleading. Concerted action is action that has been planned, arranged, adjusted, agreed upon and settled between parties acting together, in pursuance of some design or in accordance with some scheme. Concerted action, when it exists and is urged to show bad faith and improper motives, is a fact, and like any other fact upon which a charge is predicated, must be shown to exist. It cannot be inferred. It is not directly charged in the return and it is therefore not within the scope of the motion we are considering.

[4] The specific things stated by the defendant in its return to show the bad faith charged, were the failure of the relator to vote at a stockholders' meeting at which it was represented, its failure to attend by representative another stockholders' meeting of the defendant company, at which the "general ledger", one of the books which the relator seeks to examine, was opened to the inspection of the stockholders present, and that it "neglected and treated with contempt the efforts of the defendant company to so shape its action, in accordance with the opinion of the Supreme Court of this state, that no complaint could be made of defendant company, or its officers, by petitioner or any other stockholder."

We are of opinion that the failure of the representative of the relator bank to vote at a stockholders' meeting of the defendant company does not suggest bad faith on the part of the relator in asking for information relative to the value of the shares of stock, nor do we think that its failure to be present at a meeting at which an opportunity was afforded the stockholders generally to inspect one of the sources of information which this relator is asking to examine, operates as an estoppel of its further insistence

or that the opening of a ledger to assembled stockholders is a part compliance by the defendant with the mandate of the alternative writ.

*Second.* In further support of its charge of bad faith on the part of the relator in neglecting and treating with contempt the efforts of the defendant to shape its action in harmony with the opinion of the Supreme Court in the *Brumley case, supra,* and also to show its compliance in whole or in part with the mandate of the alternative writ in this case, the defendant in its return denies the allegation of the relator, that it "has no knowledge of the value of the shares of the defendant company held by it and is unable to ascertain from said defendant the facts necessary to enable it to determine the value of said shares," and in reply "doth say that the statement is false and untrue," and "doth show that the defendant hath several times furnished and freely disclosed to the petitioner all facts and figures essential and sufficient to furnish the information whereby the relator might determine the value of its stock."

The question of the bad faith of the relator in refusing the information furnished and tendered, as well as the question of the defendant's proper compliance with the alternative writ, depended upon the sufficiency of the information furnished and offered. This information was furnished or offered in several ways, "in one instance being in a conversation between the president of the relator and the defendant." As the substance of the conversation is not given, its sufficiency cannot be passed upon by the court. "In another in a letter of defendant to relator." As the letter is not given or its contents shown, unless the letter referred to be Exhibit B, which will be presently considered, the court cannot determine whether the relator was given sufficient information or not. "In another in the expert written report of chartered public accountants who made a complete examination of the defendant's books and business, a copy of which was furnished the relator." This might have given full information to the relator, but as it, like the two preceding methods, gives none to the court, by which we can pass upon the question of sufficiency, we must hold that the return to this extent is insufficient. "And

lastly the fullest opportunity to obtain such information was furnished and offered the relator as set forth in Exhibit B, attached hereto, and such opportunity was refused by the petitioner."

[5]   Under the practice of this court in proceedings in mandamus, the relator by its petition must disclose a state of facts that establishes its legal right to the remedy it seeks, and when an alternative writ issues to enforce that right, the defendant by its return must either show that it has obeyed the command of the writ, or, in the alternative, deny the averments of the petition upon which the writ was awarded, and show the relator to be without right to the remedy.   There must be denials of those averments that are material to establishing the petitioner's right, and in order to avoid obedience to the mandate of the writ, the denials must be unequivocal, complete and sufficient.   They must be sufficient, not merely in the estimation of the pleader, but must be so pleaded as to disclose their sufficiency to the court that is called upon to pass upon their sufficiency.   When the sufficiency of the denials is thus disclosed, they are accepted as true; when their sufficiency is not disclosed, and the mandate of the writ is not obeyed, the return is insufficient, and to that extent the case stands as if no return were made at all.   The averments of the petition then remain as true and when they establish a legal right, the writ of peremptory mandamus is awarded to enforce the right.   This is the principle of the procedure that has governed the court in its deliberation upon the matters previously alluded to and to the matter next considered.

*Second* and *Third*.   The manner of the defendant's compliance with the mandate of the writ, as well as its excuse for failing literally to comply with it, appears principally in the letter referred to, marked Exhibit B, which is made a part of the return.   This letter was written by the defendant company to the relator, after the issuance of the alternative writ in this case and after the decision of the Supreme Court in the *Brumley case, supra,* and before · the filing of the amended return now under consideration.   It evidently represents the effort of the defendant company to conform its course to the law as expressed in the opinion of the court in that case.   The letter contains an offer to submit books and

papers for the relator's inspection, and so far as it relates to the books and papers now asked for, is in the following language:

"As to the ledgers of this company referred to in parapraph (e) of the alternative writ, we decline to permit you to inspect or examine the same or any other books of this company showing its private business, the names of its customers or persons with whom it deals, or the prices at which it buys or sells materials, stock or paper. But we now notify you that on Wednesday next January fourth, at two o'clock p. m., the president of this company will attend at Room No. 607 in the building of the Equitable Guarantee and Trust Company, Ninth and Market Streets, in the City of Wilmington, and will there exhibit to you for any proper use you can make of them, statements, books and reports of the company showing in detail the assets and liabilities of this company and the values and amounts thereof, and will then and there produce to you and furnish any and all information in this company's books and records essential and sufficient to furnish you the information whereby you will be able to determine the value of your stock so far as can be determined from said books. You are further notified that the statements referred to in paragraph (f) of the alternative writ are confidential statements for the use of the board of directors only, which stockholders are not permitted to see, and these will not therefore be submitted to you; these said statements being in no way essential to the determination of or proper for consideration in connection with the ascertainment of the values of your stock, which is true also of the ledgers and other books, etc., referred to in paragraph (e) before mentioned."

[6] Although in the summary of the return the defendant avers that it "has opened to the inspection of the said petitioner *the ledgers* and other books of the company essential and sufficient to furnish the petitioner the information" sought, "and so complied with every demand which has been made on it and any reasonable order which the court might make regarding its ledgers and other books * * * as set out in paragraph (e) of the said writ," the defendant, by the letter referred to, as well as by paragraph 9 of the return, specifically declined to permit the

relator to inspect or examine the ledgers specifically named in paragraph (e) of the mandate of the writ, as well as the statements of the company, which the court understands to be in the nature of balance sheets, named in paragraph (f) of the mandate of the writ. The ledgers of certain periods and the statements to directors for certain periods were the books and papers ordered by the writ to be opened for inspection. This order the defendant declined to obey, and in excuse therefor the defendant avers, that it offered "to exhibit to the petitioner *for any proper use* it could make of them, statements, books and reports of the defendant company, showing in detail the assets and liabilities of the defendant company and the value and amounts thereof, and would * * * produce to petitioner and furnish any and all information in defendant company's books and records *essential* and *sufficient* to furnish the petitioner the information."

As this offer of statements and books contains a refusal by the defendant to submit for inspection the specific statements and books mentioned in the writ, it is apparent that the "statements, books and reports" offered by the defendant for the relator's inspection, were statements, books and reports other than and different from those which the defendant was commanded by the alternative writ to open to the relator. Of the statements, books and reports so offered, nothing is given to show their character, the nature or extent of the information to be gotten from them or the periods of time their contents embraced. Instead of being made directly for the specific purposes indicated in the writ, the offer is somewhat equivocal in being made "for any proper purpose", thereby suggesting that the defendant reserved to itself the right to pass upon the propriety of the purpose of the inspection. As the offer of "information in the defendant's books and records" extended to or was limited to such as was "essential and sufficient to furnish the petitioner the information" desired, without showing the nature and extent of the information, from which the court might pass upon its essentiality and sufficiency, it would appear that had the relator availed itself of the offer, the defendant would have determined for itself what was essential and sufficient to supply the information and what would constitute a

compliance with the command of the writ. The bare offer by the defendant to furnish all information in its books "essential and sufficient" to supply the information sought, and the bare averment of the defendant that the books and the statements mentioned in paragraphs (e) and (f) of the writ are "in no way essential to the determination of or proper for consideration in connection with the ascertainment of the value" of the shares of stock, are conclusions or judgments of the defendant which alone cannot be pleaded as facts in denial of the relator's right to the inspection of the particular books and statements, it being the duty of the defendant to show by its pleading their non-essentiality and it being a function of the court to pass thereupon.

We are of opinion that bad faith on the part of the relator charged by the defendant in its return, is not pleaded or shown so as to affect the right of the relator to the remedy it is pursuing; that the denial by the defendant that the relator is unable to obtain from the defendant the information necessary to enable it to ascertain the value of its shares, is not clear and positive, but is uncertain, evasive and insufficient; that the offer of the defendant to furnish the information is insufficient, as a compliance with the writ, in that it is not in accord with the ruling of the Superior Court in effectuating the decree of the Supreme Court in the *Brumley case, supra;* and that the return leaves undenied the following averments of the petition:

(a)  That the relator is a national banking corporation.

(b)  That the defendant is a Delaware corporation with an outstanding capitalization of one million two hundred and fifty thousand dollars.

(c)  That the relator owns two hundred and seventy-five shares of the stock of the defendant corporation, aggregating twenty-seven thousand five hundred dollars.

(d)  That the relator was compelled to acquire said stock for its own protection, the same having been pledged as collateral to secure loans made by relator.

(e)  That relator, as a national bank, is required under the federal law and has been instructed by national bank examiners

Motion Granted—Amended Return Quashed.

to ascertain the value of said stock and report the same, so as to enable a determination of the true value of the bank's assets.

(f)     That the said stock has no general market and pays no dividends. That the relator desires to sell its stock, but cannot hope to do so unless it can furnish contemplated purchasers some knowledge or assurance of the value of the stock. That the relator requested the defendant in writing to permit it to inspect certain of the defendant's books, which request was refused.

These averments were considered sufficient by this court upon which to award an alternative writ of mandamus, and these averments, undisturbed by sufficient denials, are in our opinion sufficient upon which to award the writ of peremptory mandamus.

The motion to quash the amended return to the alternative writ is granted and the amended return is quashed to the extent contemplated by the motion and considered in this opinion.