STATE OF DELAWARE upon the relation of JOHN E. LINIHAN, vs. UNITED BROKERAGE COMPANY, Samuel T. Carnes, J. P. McGehee and James M. Satterfield.

1. CORPORATIONS—RIGHTS OF STOCKHOLDERS—INSPECTION OF BOOKS.

A stockholder has the right to inspect the books of the corporation at a proper time for proper purposes.

2. MANDAMUS—RIGHTS OF STOCKHOLDERS—INSPECTION OF BOOKS.

On a stockholder's petition for mandamus for inspection of books of the corporation, if it appears from the corporation's return that he desires the inspection for improper purpose, the court in its discretion will not order the inspection.

3. MANDAMUS—RIGHTS OF STOCKHOLDERS—INSPECTION OF BOOKS.

Where the return to a stockholder's mandamus petition to compel the corporation to allow him to inspect his books unequivocally alleged that he desired the inspection for the purpose of bringing annoying and harassing suits against the corporation without just cause, his petition should be denied.

4. MANDAMUS—RIGHTS OF STOCKHOLDERS—INSPECTION OF BOOKS.

If it is sufficiently averred in the return that the purpose of relator in seeking an inspection of the corporate books is an improper one, for the purpose of the proceeding, the answer must be accepted as true, and the relator referred to what other remedy he may have at common law.

(*June* 27, 1917.)

Judges RICE and HEISEL sitting.

*Marvel, Marvel, Wolcott and Layton* for plaintiff.

*Andrew C. Gray* for United Brokerage Company, *Robert H. Richards* for Samuel T. Cairns, and *James M. Satterfield* in *pro. per.*, defendants.

Superior Court, New Castle County, May Term, 1917.

RULE TO SHOW CAUSE, No. 126, March Term, 1917.

PETITION for mandamus by the State of Delaware, on relation of John E. Linihan, against United Brokerage Company, Samuel D. Carnes, J. P. McGehee and James M. Satterfield to compel the production of books. Service on United Brokerage Company and James M. Satterfield, and non-suit as to Carnes and McGehee. Motion to dismiss petition and discharge rule as to James M. Satterfield, the resident agent, on the ground that he was neither a necessary or proper defendant. Granted. On return of the rule, the alternative writ was on motion issued

against the United Brokerage Company. Motion to quash return to alternative writ. Overruled. Peremptory writ denied.

RICE, J., delivering the opinion of the court:

The State of Delaware upon relation of John E. Linihan, filed a petition in this court, praying for a writ of peremptory mandamus, directed to United Brokerage Company, Samuel D. Carnes, J. P. McGehee and James M. Satterfield.

Upon the issuance and return of the rule to show cause why the prayer of the petitioner should not be granted, an alternative writ of mandamus was issued on the twenty-fourth day of March, A. D. 1917. The petition was incorporated in the alternative writ. On the seventh day of May following, the defendant filed a return to the alternative writ of mandamus. In this return the defendant admits the allegations appearing in the first, second and third paragraphs of the petition, to wit: That the petitioner is a resident of the City of Chicago and State of Illinois; that the United Brokerage Company is a corporation organized and existing under the laws of the State of Delaware, and Samuel D. Carnes is the president, and J. P. McGehee is the secretary and treasurer of said corporation, and James M. Satterfield is the resident agent of said corporation; that the company has an authorized capital stock of eleven million dollars, of which one million dollars is preferred and ten million dollars is common stock, and that the relator is the owner of twenty-five hundred and fifty shares of said common stock.

In answer to the fourth paragraph of the petition, the defendant admits that no dividend has been declared on the common stock of the company.

To the fifth paragraph of the petition, the defendant admits that until June 14, 1916, it maintained an office at number 220 West Forty-Second Street, New York City, at which office the books and records of the company were kept, but denies that Barron G. Collier owns the majority of its stock or is its controlling stockholder, and avers that the said Collier is the largest individual stockholder.

The defendant denies the averment in the sixth paragraph of said petition that in the month of November, 1916, the relator determined, if possible, to dispose of his stock in the defendant company.

The defendant also admits that its stock is not listed on any exchange and is not currently dealt in at any place of public sale and exchange of stock.

In reply to the seventh paragraph of the petition, the defendant makes certain admissions not necessary here to set forth.

The defendant admits the averments in the eighth paragraph of the petition that certain letters were sent by the relator and for the relator to the defendant requesting an inspection of certain books of the corporation.

To the ninth paragraph of the petition, the defendant admits that it is a holding company, and that its properties consist of the capital stock of other corporations, and bonds of United Cereal Mills, Limited, but denies that it owns any of the capital stock of the said United Cereal Mills, Limited.

The defendant admits the averment in the tenth paragraph of the petition, that the said United Cereal Mills, Limited, did commence an action in foreign attachment in the Superior Court of the State of Delaware, in and for New Castle County, against the relator, John E. Linihan, and attached the shares of stock of the said relator in said United Brokerage Company, the defendant herein, and admits that the bail demanded in said writ was the sum of fifty thousand dollars, but denies that the bringing and commencement of said action was brought by procuration of this defendant or its officers.

The seventeenth paragraph of defendant's return is in the following language:

Further answering said petition, the defendant avers that the demands of the relator for the privilege of inspecting the books and records of this defendant, and of making copies thereof, and the institution of this suit, were not in good faith, nor for any legitimate or lawful purpose, but were made and instituted for the sole pupose and object of harassing the defendant and the said Barron G. Collier, the defendant's principal stockholder,

with the view of compelling it or him to acquire the said shares of stock owned by the relator in the defendant, and as a counter attack to induce the said United Cereal Mills, Limited, to abandon or compromise just and valid claims which it has against the relator, growing out of his mismanagement of the said United Cereal Mills, Limited, while he was in charge thereof, as will be hereinafter more fully detailed.

The defendant avers that for several years prior to the twenty-fifth day of October, A. D. 1916, the relator was an officer and director of the said United Cereal Mills, Limited, a partnership association under the laws of the State of Michigan, and during said period, from time to time, held the offices of general manager, treasurer, vice-chairman and vice-president, and at some portions of said period held all of said offices at the same time, and during said period had practical and exclusive control, management and direction, with slight exceptions, of all of the business and affairs of said association. During said period, the said relator had full right and power to employ and discharge all agents and employees of said association, to make all legitimate contracts in its name and behalf, and to disburse its funds in the operation and conduct of its business.

During all of said period of employment of the said relator by the said partnership association, the said association was almost entirely owned by either this defendant or by the said "United Brokerage Company of New York," a corporation all of whose stock is and always has been owned by this defendant.

For some time prior to October 25, 1916, the United Brokerage Company of New York, owning as aforesaid almost all of the capital stock of said United Cereal Mills, Limited, was dissatisfied with the management of the affairs of the said United Cereal Mills, Limited, by the relator, and, although repeated requests were made for the same, by the said United Brokerage Company of New York, no accurate or definite information regarding the business and affairs of said partnership association could be obtained by the said United Brokerage Company of New York from either the relator or his subordinate officials and employees. Consequently, about the month of April, 1916,

it was decided by the said United Brokerage Company of New York to have a report made by a qualified expert accountant on the condition of the said partnership association and its business; but the relator, being then the managing officer of said partnership association and being in actual possession and control of all its books and records, positively refused to allow such accountant to have access to said books and records for the purpose of making an investigation of the affairs and business of said association. The relator, well knowing that such an investigation would disclose mismanagement by him of the affairs of said association and misappropriation of its funds by him, persistently refused either to give any information to the said United Brokerage Company of New York, or its representatives, with reference to the business and affairs of said association, and also persistently refused to permit any such information to be obtained by the said United Brokerage Company of New York; and the said relator expressly instructed his subordinates to refuse to every one access whatsoever to the books and records of the said partnership association and to refuse any information whatsoever relating to its affairs to the United Brokerage Company of New York, and also to every other person whatsoever. The said relator, then and there knowing that this defendant, through its ownership of the stock of the United Brokerage Company of New York, was interested in the affairs of the said United Cereal Mills, Limited, and, then and there, planning a counter attack to divert or prevent the attempts of the United Brokerage Company of New York to obtain a disclosure of the true conditions of the business and affairs of said partnership association, seized hold of the fact that he was a stockholder in the defendant company as the basis of such counter attack and forthwith made a demand that the defendant company, or the said Barron G. Collier, who was then known to the relator to be the largest stockholder in the defendant company, should purchase his (the relator's) stock in the defendant company, at a price satisfactory to the relator; and the said relator then and there threatened that unless such purchase should be made he would take legal proceedings, the character of which he did not then disclose, for the purpose of

harassing and injuring the defendant. The defendant corporation and the said Collier both refused to purchase said shares of stock and the said relator thereupon began to make demands for the right to inspect the books and records of the defendant and persisted in his refusal to permit any examination to be made of the affairs of the said United Cereal Mills, Limited, by the board of managers of said partnership association, as well as by the owner of practically the entire capital stock thereof; and claimed, as an excuse for such conduct, that all of the board of managers and officers of said partnership association, other than himself, had not been duly elected. By such, and other similar tactics, the said relator, between April, 1916, and October, 1916, endeavored to prevent access to the books and records of said partnership association by all other persons than himself and his appointed subordinates. It having become evident that the relator's efforts to prevent an examination into the affairs of the association were caused by his anxiety to conceal from the other officers and stockholders some mismanagement of the business, a general meeting of the shareholders of said association was held in the month of October, 1916, and a board of managers was elected, of which board the relator was not chosen as a member; but as a matter of fairness to the relator, he was temporarily continued as manager of the plants of the said association until an investigation and report could be made of the condition of the business. Under the Michigan statute (*How. Ann. St.* 1912, §§ 5425–5441), authorizing the organization of partnership associations, the governing body thereof is called a "board of managers." Almost immediately after the new board of managers was elected, it was discovered by the said board of managers that the said partnership association had a number of outstanding checks without sufficient funds in bank to pay them when presented, and that other financial transactions had been made by the said relator which reflected seriously upon the honesty of the management of the said association and threatened the financial standing of the association. Thereupon, it was made plain to the relator that the financial assistance which had theretofore been extended to

the said association by the defendant company would be with-drawn unless the relator should completely sever his connection with said association and turn over all books, records and papers of the said association unto such persons as might be appointed by the said Board of Managers. The relator, fully appreciating that he would be seriously compromised if said checks went to protest, and the financial transactions above referred to were exposed, therefore agreed to, and did, then and there, sever his connection with the said association and made delivery of all its books and papers, and the attorney for said relator, then and there, for the first time, informed the representatives of the said Board of Managers that the relator had been using the money and funds of said association for speculation in grain and had thereby lost moneys and funds of said association amounting to about the sum of forty thousand dollars.

The examination of the books and affairs of the said asso-ciation which followed the severance of the relator's connection therewith, disclosed the fact that the said relator for several years prior thereto had been unlawfully and without authority using the funds and money of said association for the purpose of speculating in grain, ostensibly for the company but, in a num-ber of instances, in the names of other parties, and that such conduct on the part of said relator had resulted in a misappro-priation and loss of about the sum of thirty-eight thousand, eight hundred and seventy-five dollars and fifty cents of the money and funds of said partnership association; and said exami-nation also disclosed the further fact that the said relator, for several years prior to the severance of his relations with said association, had been using the funds of the said association for the purpose of paying his private debts and obligations and thereby had overdrawn his personal salary account with said association, for various amounts from time to time, and that the amount of such overdrafts, at the time of such severance of relations, aggregated the sum of six thousand eight hundred and eighty-six dollars and thirty-five cents, the said amount being the moneys of the said United Cereal Mills, Limited, which the said relator had thereto-fore unlawfully taken and appropriated to his own use, in addi-

tion to the above mentioned funds so as aforesaid misappropriated by him for the purpose of speculating in grain; and it is to recover the above mentioned sums of money, so misappropriated as aforesaid by the said relator, that the said suit by foreign attachment has been brought in the said Superior Court of the State of Delaware.

This defendant further avers that the persistent refusals of the relator to permit the United Brokerage Company of New York, which was and is practically the sole owner of the said United Cereal Mills, Limited, to obtain any information abou the conduct of the business of the said United Cereal Mills' Limited, of which, as aforesaid, the said relator was the manager, and the sudden demand of the relator for the right to inspect the books of the defendant, and the threat of the relator to institute legal proceedings against the defendant unless it should purchase his stock in the defendant at a price satisfactory to him, were all inspired solely by the relator's desire to avoid the consequences of his wrongful and illegal acts, hereinabove set forth, as manager of the said United Cereal Mills, Limited. Anticipating that some legal action would be taken against him by the said United Cereal Mills, Limited, the relator, even after the events hereinabove detailed, continued to endeavor to compel either this defendant, or the said Collier, to purchase his shares of stock in this defendant company; and, for the purpose of "holding up" the defendant, or the said Collier, and coercing them to purchase his said shares of stock, or to exert their influence to prevent any legal action being taken against him by the said relator threatened to exercise his right as a stockholder to inspect the books and records of the defendant and threatened to use the information gained from such inspection for the purpose of bringing suits to annoy and harass the defendant and to injure its business and the business of its said subsidiaries, engaged, as aforesaid, in conducting the said street railway advertising business. And this defendant avers that, if permitted access to the books of the defendant, the said relator will use the information gained therefrom as the basis of unjust and unsupportable legal actions in the hope that he may thereby be able to compel this

defendant, or the said Collier, to purchase his shares of stock, or
to compel them, indirectly, to influence the United Cereal Mills,
Limited, to desist from proceeding against him for the wrongful
acts aforesaid.

This defendant further avers that it is the declared purpose
and intention of the said relator, in case he obtains from this
court the right to inspect and make copies of the books, papers
and accounts of the defendant corporation, to use the information
thus obtained to injure the street railway advertising business of
the said subsidiaries of the said defendant, and also to use such
information as the basis of suits against the defendant corpora-
tion or the said Collier, or both of them, for the sole purpose of
harassing and annoying them to the extent of compelling them,
or one or the other of them, to purchase his said shares of stock,
as the price of peace.

This defendant further avers that this present suit, itself,
has not been brought for any proper purpose, but, on the other
hand, that the same has been brought for the improper, evil and
vicious purpose of using this court and its process as a means of
coercing either the said defendant or the said Collier to purchase
the said shares of stock, so as aforesaid owned by the relator,
whereas, ·in fact, neither the said defendant nor the said Collier
have any desire to purchase the same. And this defendant fur-
ther avers that, so far as it is concerned, it will not permit itself
to be coerced to purchase the said relator's shares of stock, under
any circumstances.

Argument was heard on a motion to quash defendant's
return to the alternative writ.

The question for our immediate consideration and determina-
tion is whether the averments contained in the seventeenth para-
graph of the return show sufficient reason why the relator should
not be permitted, under the order of the court, to inspect and
make copies of, and extracts from, the books of the company as
prayed for in the petition. We believe the questions of law
raised have all been determined by the courts of this state.

The right which relator seeks in this suit is the ·common-law
right of the stockholder to inspect the books of the corporation at

the proper time and for a lawful and proper purpose.    The relator in his petition expressly avers that he does not wish to see the books and papers for mere idle curiosity, nor for speculative purposes, nor for any improper purpose whatever, and sets forth in his petition what under ordinary circumstances would be a proper purpose, and if it were not for the issues raised by the seventeenth paragraph of the defendant's return, we think he would have established his right to inspect certain books of the defendant company.

[1] It is a principle of law recognized in this state, that a stockholder has the right to inspect the books of the corporation at a proper time for proper purposes.    *Julvecourt v. Pan-American Co.*, 5 *Penn.* 395, 61 *Atl.* 398, 63, *Atl.* 1118; *Brumley v. Jessup & Moore Paper Co.*, 1 *Boyce*, 397, 77 *Atl.* 16; *State v. Jessup & Moore Paper Co.*, 4 *Boyce*, 248, 88 *Atl.* 449.

[2] If it appears from an inspection of the defendant's return, that relator's purpose is not as alleged by him, for a proper purpose, but is, as averred by the defendant, for an improper purpose, then the court in its discretion would not make an order for the inspection of defendant's books by the relator, and in this case would not quash return filed by the defendant.

In *State v. Jessup & Moore Paper Co.*, *supra*, it was said:

" The answer made by the return is threefold in nature.    It first charges the relator with actions and motives which, if true, would deprive it of the right to obtain information it seeks*    *    *"

—and again with reference to the bad faith and improper motive of the relator in the same case, the court said:

"Bad faith and improper motive of the kind alleged, would, if true, deprive the relator of any right to inspect the books of a corporation of which it is a stockholder; but such an allegation of bad faith and improper motive, without something to show how and in what respect it exists, is alone insufficient as a denial of the plaintiff's good faith and proper motive, just as a bald averment of the relator as to its good faith and proper purpose, without something to show the real or probable existence of the one and the other, would be an insufficient averment in the petition upon which to ask for and obtain the inspection of corporate books."

[3] In passing upon the question raised by the return of the defendant, we must not only keep in mind the right sought to be

exercised by the relator, but we must also keep before us the rights of the other stockholders to have their interests in the company protected.

There is much in the seventeenth paragraph of defendant's return, which may seem irrelevant and would be irrelevant if it were not that it contained averments of the circumstances leading up to and throwing light upon the nature and character of the relator's demand that one of the principal stockholders purchase his stock in the defendant company, at a price satisfactory to the relator and his threat that unless such purchase should be made, he would take legal proceedings for the purpose of harassing and injuring the defendant, and also his subsequent threat to exercise his right as a stockholder to inspect the books and records of the company, and use the information gained in such inspection, for the purpose of bringing suits to annoy and harass the defendant, and to injure its business and the business of its subsidiaries.

The examination of corporate books by the relator for the purpose declared by him, as averred in the return of seeking information whereby he could bring harassing and vexatious litigation against the company, could if such purpose should be effected but bring injury to the interests of the other stockholders in the company, and would be hostile to their interests and the interests of the company, even though such litigation should be finally determined in favor of the company. Such averments of bad faith and improper purposes on the part of the relator when unequivocal, complete and sufficiently pleaded in detail, can only under our practice in mandamus proceedings, result in a denial of the plaintiff's prayer to inspect the corporate books.

In *State v. Jessup & Moore Paper Co., supra*, the court said:

"Under the practice of this court in proceedings in mandamus, the relator by its petition must disclose a state of facts that establishes its legal right to the remedy it seeks, and when an alternative writ issues to enforce that right, the defendant by its return must either show that it has obeyed the command of the writ, or, in the alternative, deny the averments of the petition, upon which the writ was awarded, and show the relator to be without right to the remedy. There must be denials of those averments that are material to establishing the petitioner's right, and in order to avoid obedience to the mandate of the writ, the denials must be unequivocal, complete and sufficient. They must be sufficient, not merely in the estimation of the pleader, but must be so pleaded as to disclose their sufficiency to the court that is

called upon to pass upon their sufficiency. When the sufficiency of the denials is thus disclosed, they are accepted as true; when their sufficiency is not disclosed, and the mandate of the writ is not obeyed, the return is insufficient, and to that extent the case stands as if no return were made at all.   *   *   *"

It may be a hardship to the relator in this case not to be allowed to inspect the books of the company, as it may prevent him from securing information as to the value of the stock owned by him, and attached in the proceeding instituted by the United Cereal Mills, Limited, and may result in preventing him from securing bail in that proceeding. But unfortunately for him, the return avers and sets forth improper threats and demands against the company and at least one of the stockholders in the company, which if carried out, would undoubtedly prove most injurious to the welfare of the company and to the interests of the stockholders.

[4]    Under our practice, if it is sufficiently averred in the return that the purpose of relator in seeking an inspection of the corporate books is an improper one, for the purposes of the proceeding, the answer must be accepted as true and the relator referred to what other remedy he may have at common law. We have no practice or procedure in this state, whereby issues raised by the allegation in the petition and the averments in the return may be submitted upon evidence to a jury for their determination.

We are of the opinion that the bad faith and improper purposes on the part of the relator, averred by the defendant in its return, is adequately pleaded and it is effectively shown that the relator should not be permitted to inspect and make copies of, and extracts from, the books of the company, as prayed for in his petition filed, and therefore we are of the opinion that the motion to quash the return should not be granted.

The peremptory writ is denied.