**Plato A. SKOURAS, Plaintiff,**

v.

**ADMIRALTY ENTERPRISES, INC., a Delaware Corporation, Defendant.**

Court of Chancery of Delaware,
New Castle County.

Submitted Jan. 4, 1978.
Decided April 3, 1978.

David A. Drexler and A. Gilchrist Sparks, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, and David Simon, of Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for defendant.

MARVEL, Chancellor:

Plaintiff Plato A. Skouras, the holder of 2,871 shares of stock of the defendant Admiralty Enterprises, Inc., representing an interest of between four and five percent in said corporation's common stock,[1] seeks an order of this Court granting him the right to inspect certain books and records of Admiralty as well as the books of such corporation's affiliates pursuant to the provisions of 8 Del.C. Section 220.

The stated purpose of the desired inspection, as set forth in plaintiff's notice of demand, is to enable plaintiff to seek to substantiate his fears of the existence of mismanagement of the affairs of Admiralty, including the suspected use by corporate officers and directors of the assets of Admiralty and its subsidiaries for their personal advantage. Admiralty is a closely held family corporation engaged in the shipping business, having been organized in the mid-1950's by plaintiff's late father and uncle, by his brother, as well as by plaintiff himself, plaintiff having been a member of Admiralty's board of directors from 1963 to 1967.

Admiralty owns 100% of the common stock, 100% of the preferred stock and 67½% of the Class A (voting) stock of PSS Steamship Company, Inc., while PSS owns 100% of Prudential Lines, Inc. Admiralty also owns 100% of the stock of World Wide Tankers. In turn, Skouras Maritime Corporation, which was created to hold the controlling interest in Admiralty held by the late Spryos P. Skouras, by his son, Spryos S. Skouras, and the latter's wife, Barbara F. Skouras, is the registered owner of approximately 69% of the stock of Admiralty and 32½% of the PSS Class A stock. Plaintiff owns no stock in SMC, World Wide Tankers, PSS, or in Prudential.

The areas of Admiralty's business affairs as to which plaintiff has expressed concern and as to which he seeks production of books and records encompass a wide range of alleged corporate wrongdoings, including suspected improper payments to corporate officers and directors as well as to stockholders and others, including members of the Skouras family; improper payments for numerous club memberships for the use of corporate officers and directors; overpayments to Barbara F. Skouras for the unnecessarily lavish decoration and furnishing of the offices and homes of corporate officers and directors as well as the over-decoration of corporate ships by the same person; excessive expenses in connection with ceremonial matters such as keel-layings and launchings, including those of guests on so-called shake-down voyages; improper application of moneys recovered in connection with advancements to Admiralty under the federal maritime subsidy program, as well as the whole spectrum of Admiralty's complex financial dealings both as to borrowings and the sales of securities, as well as bank loans to non-employees and non-stockholders. The recital of the specific transactions above alluded to is not exclusive, there being other areas sought to be looked into having to do with Admiralty's entire financial picture, the books and records of which plaintiff wishes to inspect.

Admiralty contends that plaintiff's present efforts are not directed towards a proper purpose but are rather designed to harass Admiralty and other members of the

---

1. Plaintiff also has a beneficial interest in an additional 8 to 9% of Admiralty stock under the terms of his father's testamentary trust.

Skouras family in the hope of eliciting from Admiralty an offer to purchase his Admiralty stock at a premium.

A preliminary question raised by defendant in its briefs but not by way of answer or at trial,[2] is whether or not plaintiff's demand for inspection is fatally defective in failing strictly to comply with the provisions of 8 Del.C. Section 220(b) which require that a stockholder's demand be " * * * under oath stating the purpose thereof." Testimony at trial as well as the notice of demand itself disclose that the only part of plaintiff's demand of March 21, 1977 addressed to Admiralty, which was under oath, is as follows:

"PLATO A. SKOURAS, of lawful age, being first duly sworn, upon oath, deposes and says that he is a stockholder of Admiralty Enterprises, Inc., a Delaware corporation, that he desires to inspect, in person or through his agents, the books and records of Admiralty Enterprises, Inc. for the purpose of investigating the likelihood of general corporate mismanagement and improper transactions, and demands the right during the usual hours for business to inspect the corporation's books and records and to make copies or extracts therefrom.

Further affiant saith not."

The rest of the demand including references to the specific areas of inquiry sought to be examined as well as a more detailed statement of plaintiff's purpose is found in a letter dated March 23, 1977, signed by plaintiff but which was not under oath. Defendant contends that in ruling on plaintiff's demand the Court should adopt a strict construction of 8 Del.C. Section 220 and that the application of such test to plaintiff's demand must lead to its rejection although the record discloses that objection to the nature of plaintiff's demand was not explicitly made until after the parties had

expended substantial time, effort and money in preparation for trial.

In *Monogram Industries, Inc. v. Royal Industries, Inc.,* Del.Supr., 372 A.2d 171 (1977), the Supreme Court of Delaware in a tender offer case concerned with the construction of 8 Del.C. Section 203 which had to do with a statutory requirement governing the making of an offer for tenders of stock, namely the stating of " * * * the date on which the offeror may first purchase tendered securities * * * " ruled in response to reliance on precedents in support of strict statutory construction of the corporation law of Delaware as follows:

"We find Royal's position to be hypertechnical and without reasonable basis. Strict compliance with the statutory requirement, without the protective phrase, should have been possible and would have been preferable; but no valid reason was brought to our attention for holding that the language adopted by Monogram was unduly prejudicial to Royal or its stockholders or violative of the policy of the Statute. This objection seems based more upon target-company defense tactics than sound principles of statutory construction."

■ Similarly, in the case at bar, defendant has long been fully aware of the reasons behind plaintiff's demand, and defendant's reliance on a technical defect in plaintiff's demand may not be permitted to defeat his claim under the facts and circumstances adduced at trial. Compare *Singer v. Magnavox Company,* Del.Supr., 380 A.2d 969 (1977), in which the Supreme Court of Delaware held that strict compliance with Delaware's merger statute on the part of the resulting corporation in a merger case does not make such transaction immune from judicial review of its overall fairness.

■ A proper purpose is defined in 8 Del.C. Section 220 as one which is " * * *

---

**2.** Although defendant objected at trial to the demand as not having been made pursuant to 8 Del.C. Section 220 (transcript p. 11), no evidence was presented at trial to support such position.

reasonably related to such person's interest as a stockholder * * * ", and it is clearly proper for a stockholder to ask leave to examine corporate books and records to follow up his suspicions of corporate mismanagement, thereby acting not only on his own behalf but on that of the corporation and its other stockholders, a purpose which plaintiff asserts in this action, and one which finds support in Delaware decisional law, *Nodana Petroleum Corporation v. State,* Del.Supr., 123 A.2d 243 (1956), *Sack v. Cadence Industries Corporation,* Del.Ch., C.A. 4765 (April 7, 1975), and *Henshaw v. American Cement Corporation,* Del.Ch., 252 A.2d 125 (1969). Moreover, although plaintiff did not completely comply with the strict requirements of 8 Del.C. Section 220, I am nonetheless satisfied that notwithstanding the fact that plaintiff's letter of March 23 may not be deemed to have been incorporated by reference into his sworn demand,[3] that nonetheless delivery of both the letter and demand under oath served fully to inform defendant of the specific nature of plaintiff's purpose, thereby causing such demand to be given an "expanded reading," *Weisman v. Western Pacific Industries, Inc.,* Del.Ch., 344 A.2d 267, 269 (1975). Thus, I am satisfied that plaintiff's statement of demand effectively informed management as to what plaintiff is seeking. Next, under the provisions of 8 Del.C. Section 220(c) the burden of proving a proper purpose is on the stockholder, where, as here, the demand is for inspection of books and records rather than for a stock list.[4] Furthermore, more than a general statement is required in order for the Court to determine the propriety of a demand, *Floto v. Industrial Energy Corporation,* Del. Ch., C.A. 4541 (August 7, 1974), and *State ex rel. Miller v. Loft, Inc.,* Del.Super., 156

A. 170 (1931). In addition, although the Court cannot, of course, read the thoughts of a stockholder, it must be satisfied that a plaintiff has successfully carried the burden of proving that the purpose behind his demand is proper. Once a proper purpose is established, it becomes irrelevant that the stockholder may have a secondary and perhaps questionable ulterior purpose behind his primary purpose, *Western Air Lines, Inc. v. Kekorian,* Del.Supr., 254 A.2d 240 (1969), *General Time Corporation v. Talley Industries, Inc.,* Del.Supr., 240 A.2d 755 (1968), and *Skoglund v. Ormand Industries, Inc.,* Del.Ch., 372 A.2d 204 (1976).

■ A further qualification as to the right of inspection of books and records is that even if a proper purpose for a demand is demonstrated and such demand is shown to be reasonably related to a plaintiff's interest as a stockholder, nonetheless such demand must not be for a purpose adverse to the best interests of the corporation, *Skoglund v. Ormand Industries, Inc.,* supra, and *State ex rel. Cochran v. Penn-Beaver Oil Co.,* Del.Super., 143 A. 257, 260 (1926).

■ Whether or not a plaintiff is entitled to inspection of corporate books and records depends on whether or not a clear indication of wrong-doing on the part of corporate mismanagement has been established clearly as a result of a trial, *Skoglund v. Ormand Industries, Inc.,* supra and compare *Neely v. Oklahoma Publishing Company,* Del.Ch., C.A. 5293 (August 15, 1977). Here plaintiff places great emphasis on the fact that Admiralty appears to be in a precarious financial condition, and at trial plaintiff sought to establish the existence of a number of improper transactions on the part of corporate management, including

---

**3.** The strict requirements for incorporating by reference an otherwise independent document are that such document be in existence when the incorporating document is executed and that the document to be incorporated is referred to so as to reasonably identify it. See *Walsh v. St. Joseph's Home for Aged,* Del.Ch., 303 A.2d 691 (1973) and *Delaware Trust*

*Company v. Delaware Trust Company,* Del.Ch., 222 A.2d 320 (1966).

**4.** In the case of a stockholder demanding inspection of the corporation's stock ledger or list of stockholders, 8 Del.C. § 220(c) provides that " * * * the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose."

the making of loans by Admiralty not only of money but of stock for the personal benefit of directors, the improper purchase of stock from directors, and the payment of salaries to family members who performed little or no services for Admiralty or its affiliates. As noted above, plaintiff also testified at trial that Admiralty has employed the wife of Spyros P. Skouras to over-decorate its offices, has given free cruises to third parties, that Spryos P. Skouras has been for many years a member of up to twenty private clubs at Admiralty's expense, that large sums of money have been spent on ceremonial occasions having to do with ship launchings and the like, and that Admiralty's offices contain outrageously expensive works of art.

█ Plaintiff concedes that many of the practices complained of have an ostensible business purpose but contends that the apparent precariousness of defendant's financial affairs coupled with its refusal to supply plaintiff with any information relating to the matters as to which he seeks to be informed clearly support the propriety of plaintiff's demand. The payment of excessive salaries as in *Wilderman v. Wilderman*, Del.Ch., 315 A.2d 610 (1974), and *Meiselman v. Eberstadt*, Del.Ch., 170 A.2d 720 (1961), the making of improper loans, *Maclary v. Pleasant Hills, Inc.,* Del.Ch., 109 A.2d 830 (1954),[5] as well as a number of the other corporate acts complained of by plaintiff, if substantiated, would constitute self-dealing on the part of corporate fiduciaries, thus putting the burden of proving fairness upon the corporate officials charged with breaches of fiduciary duty, *Singer v. Magnavox Company*, Del.Supr., supra, and *Sterling v. Mayflower Hotel Corp.,* Del. Supr., 93 A.2d 107 (1952).

█ The decision in this case must necessarily be based upon a determination as to whether or not plaintiff's primary purpose was as set forth in his demand, or, as defendant contends, was actually designed to harass Admiralty into purchasing plaintiff's stock. In reaching a judgment on this issue, it is obvious that many of plaintiff's demands may be properly characterized as a form of harassment of Admiralty and of members of the Skouras family. Letters written by plaintiff to the Chase Manhattan Bank, Marine Midland Bank, Spryos S. Skouras, the Securities and Exchange Commission, and the Secretary of State of the State of Delaware, in which plaintiff made all-encompassing and threatening charges of wrong-doing on the part of Admiralty's directors and officers are in the record, such letters containing allegations of fraud, tax evasion, corporate mismanagement, and a scathing personal attack against Spryos S. Skouras. Plaintiff has also written to the Committee on Grievances of the New York Bar Association, charging Admiralty's counsel with a conflict of interests, a contention which was found to be without merit, and a demand for inspection arising out of a bad faith purpose such as mere harassment and annoyance of corporate officials precludes a stockholder from being granted the right to inspect corporate books and records. *State ex rel. Linihan v. United Brokerage Co.,* Del.Super., 101 A. 433 (1917) and *State ex rel. National Bank of Delaware v. Jessup & Moore Paper Co.,* Del.Super., 88 A. 449 (1913).

Although it is clear that plaintiff has acted impetuously insofar as the affairs of Admiralty are concerned and could well have been less extravagant in his written complaints about Admiralty, I am satisfied that his basic purpose, in embarking on his present project, has its roots in his concern over the activities of and problems facing Admiralty rather than by a design merely to harass. Thus, letters put in evidence disclose that plaintiff as a minority stockholder was convinced that serious damage is being and has been inflicted upon the corporation by incumbent management. In short, a careful reading of the letters which are the basis of defendant's charge of harassment discloses that plaintiff was in

---

5. It must be noted that the *Maclary* case was decided under a prior statutory provision which prohibited corporate loans to officers, directors, etc., while the present 8 Del.C. Section 143 authorizes such loans if shown to be beneficial to the corporation.

fact seeking to rally support to his battle against what he believed to be corporate acts detrimental to Admiralty and consequently to himself as a minority stockholder of such corporation.

Next, insofar as defendant claims that plaintiff's purpose in seeking inspection of the books and records of Admiralty is actually to compel the purchase of his stock, defendant argues that plaintiff has been trying to sell his stock to Admiralty or its officers and directors since 1965 when he offered to sell his interest to his father and brother for a price greatly exceeding book value plus a premium. In 1970 he again offered to sell his stock for a substantially higher price, and in 1974, plaintiff, in compliance with a transfer restriction on the sale of Admiralty stock, offered to sell his shares first to various Admiralty stockholders and then to the corporation. On February 6, 1974, plaintiff informed defendant that if his shares in Admiralty were not purchased, he would sell his shares to a Mr. Mougios, who, plaintiff knew had attempted to block the merger of Prudential and the Grace Lines, a transaction which had been carried out five or six years earlier, and who accordingly was persona non grata to the management of Admiralty. As matters transpired plaintiff did not sell his Admiralty stock to Mr. Mougios but did succeed in selling several shares to two other individuals who were not objectionable to management. Thus, defendant argues that plaintiff's wish to sell his stock at a premium coupled with a threat to sell to an individual antagonistic to Admiralty are conclusive of the fact that plaintiff is not motivated by a proper purpose in his present demand for inspection, and it is established that a demand for inspection for the basic purpose of compelling a corporation to purchase a demanding stockholder's shares is improper and will bar such a demand, *State ex rel. National Bank of Delaware v. Jessup & Moore Co.,* supra, and *State ex rel. Linihan v. United Brokerage Co.,* supra. Defendant supports such contention by reference to plaintiff's pre-trial testimony in which he testified as follows:

"Q. Would you answer my question: Was it your hope that the lawsuit and the request for information would make Admiralty more anxious, at least in part make Admiralty more anxious to purchase your shares?

"A. Well, it was my hope that I could avoid a lawsuit, but they didn't want to go ahead and give me the information, I was ready to go into a lawsuit.

"Q. You said it was your hope to avoid a lawsuit. The one way to avoid a lawsuit would be to sell your shares to Admiralty; is that right?

"A. That would be a possibility, yes." (p. 36)

However, plaintiff further testified that he has contemplated bringing the present suit for over a period of ten years, and a distinction must be drawn between a demand for inspection of books and records as a pretext for coercing a corporation into purchasing stock, and a statement that a possible basis for settlement of threatened litigation might lie in the purchase of such stock. In other words, I am satisfied that plaintiff's demand for inspection was not to compel a buy-out of his holdings but was to the effect that such a sale was a possible alternative to litigation. Compare *State ex rel. Linihan v. United Brokerage Co.,* supra, in which a request for inspection of books and records was denied on the ground that the demanding stockholder had unequivocally threatened to sue unless the defendant agreed to purchase his stock.

As noted earlier, plaintiff's inspection demand goes beyond the books and records of Admiralty in that he seeks inspection of records of Admiralty's subsidiaries, namely World Wide Tankers, and PSS, which latter corporation owns all of the stock of Prudential and is incorporated in Delaware. Admiralty, Prudential, and World Wide Tankers each maintains separate books and records. Furthermore, each has its own board of directors. However, each corporation employs the same accounting firm, and it is obvious that there is a close relationship between Admiralty and its sub-

sidiaries both as to management and policy-making.[6]

It has been contended that greater liberality should be accorded one seeking inspection of the books and records of a subsidiary than in a situation in which the question of whether or not a parent corporation is liable for the tort of its subsidiary is before the Court, *State ex rel. United Brick & Tile Co. v. Wright,* Mo.Supr., 339 Mo. 160, 95 S.W.2d 804, 808 (1936). In the case of *Martin v. D. B. Martin Co.,* Del.Ch., 88 A. 612 (1913), this Court was confronted with a situation in which two stockholders of the defendant corporation had demanded inspection of the books of eight subsidiary corporations which were not named as parties. However, all of the subsidiary corporations were engaged in the same general business as the parent; the parent owned all of the shares of seven of the subsidiaries; all of the members of the boards of directors of four of the subsidiary corporations were also directors of defendant, and a majority of the members of the boards of the remaining four subsidiaries were directors of defendant. Furthermore, the books of the subsidiaries were not in defendant's possession, custody, or control. Upon determining that the separate subsidiary corporations had been formed for fraudulent purposes, this Court granted plaintiffs' demand for inspection of the books of defendant's subsidiaries, stating:

"The interests of justice require that in order that the injuries alleged to be done to stockholders of the defendant company by the treatment of the property and business of the subsidiary companies may be righted, the legal fiction of distinct corporate entities should be disregarded, inasmuch as the subsidiary corporations were so organized and controlled and their affairs are so conducted as to make them adjuncts or instrumentalities of the defendant company. It is but a step further to regard the books, etc. of these allied companies as the books of the defendant company, or at least to be under its control to such an extent as that they will be ordered to produce them for the purpose of discovery." Id. at 616.

In *State ex rel. Rogers v. Sherman Oil Co.,* Del.Super., 117 A. 122 (1922), on the other hand, in which a demand for inspection of the books and records of a 94 percent owned subsidiary brought in the form of an action of mandamus in Superior Court was denied on the ground that the defendant, not being in possession of the subsidiary's books, the former was not in a position to comply with the Court's order were the relief sought to be granted. Accordingly, the Court declined to grant plaintiff's request for inspection, and in doing so distinguished the case of *Martin v. D. B. Martin Co.,* supra, on the ground that not only was the pending action not brought in a court of equity, but also, unlike the situation in the earlier case, the parent and subsidiary were separate and distinct entities which functioned independently.

I find the situation in the case at bar akin to that found in the case of *State ex rel. Rogers v. Sherman Oil Co.,* supra, and therefore will deny plaintiff's request to inspect the books and records of Admiralty's subsidiaries. Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity, *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* Del.Supr., 154 A.2d 684 (1959), and *State ex rel. Rogers v. Sherman Oil Co.* supra. Absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence, *Pauley Petroleum, Inc. v. Continental Oil Co.,* Del.Ch., 231 A.2d 450 (1967), aff'd, Del. Supr., 239 A.2d 629 (1968).

---

6. Prudential is subject to strict supervision by the United States Maritime Administration which regulates its trade routes, contract rights and supervises its proposed reorganizations, accounting systems, and dividend policies. Although such supervision limits the extent to which Admiralty can dictate Prudential's business affairs, it throws little, if any light on the question of whether or not Prudential is to be deemed a separate entity.

Next, defendant contends that plaintiff's demand is in any event barred by laches because plaintiff unreasonably delayed in making his demand, it being pointed out that plaintiff was a director of Admiralty until 1967 and although suspicious before that of the existence of the abuses complained of and which he now wishes to look into, took no action until the filing of this suit. It is also pointed out that Spyros P. Skouras, who was the chief organizer and manager of Admiralty, died in August, 1971, and is unavailable as a witness as to Admiralty's financial affairs, and that the expense of the inspection of Admiralty's books and records would, if granted, be greatly increased because of plaintiff's delay.

The equitable defense of laches is based on the theory that upon a person's acquiring knowledge of a wrong affecting his rights, any unreasonable delay in asserting an equitable remedy will bar such form of relief, *Federal United Corporation v. Havender,* Del.Supr., 11 A.2d 331, 343 (1940), and *Bay Newfoundland Co. v. Wilson & Co.,* Del.Ch., 4 A.2d 668, 671 (1939). Laches, however, unlike the statute of limitations at law, is not predicated upon the mere passage of time but rather calls for a showing that if the claim sought to be tardily enforced will result in an inequity because of an intervening change in conditions prejudicial to the party raising the defense, then it should be barred, *Turek v. Tull,* Del.Ch., 139 A.2d 368, 373 (1958), aff'd, Del.Ch., 147 A.2d 658, and see 2 Pomeroy's Equity Jurisprudence Section 419(a)–(d) (5th ed. 1941).

In the case of *Foss v. People's Gas Light & Coke Co.,* 241 Ill. 238, 89 N.E. 351 (1909), the court found that laches barred a stockholder's right to inspect corporate books and records, the stockholder having delayed more than forty years before making his demand, a period which the court characterized as an "unusual delay" and as constituting gross laches. Here, unlike the cited case, plaintiff's concern is not so much retrospective as it is forward looking and intended to prevent future wrongdoing. However, it is undeniable that because of

plaintiff's delay defendant will be put to greater expense than would have been incurred had a timely demand been successfully made by plaintiff. Thus, plaintiff was a member of Admiralty's board of directors until August, 1967 and was therefore until then not only in a position to have first-hand knowledge of defendant's transactions but also had a fiduciary duty to investigate the very corporate affairs here complained of, the right of a director to inspect corporate books and records being correlative with his duty to protect and preserve the corporation, *Henshaw v. American Cement Corporation,* supra. I propose to permit inspection of Admiralty's books and records, only to the extent that they reflect corporate transactions occurring after August, 1967, subject to a showing by plaintiff that additional production prior to such date may be warranted as a result of information developed as a result of the inspection hereby granted. See *Wallace v. Miller Art. Co.,* 6 A.D.2d 887, 177 N.Y.S.2d 391 (1958), and *Martin v. Columbia Pictures Corporation,* 286 App.Div. 1072, 145 N.Y.S.2d 484 (1955).

Defendant, however, citing the case *Cooch v. Grier,* Del.Ch., 59 A.2d 282 (1948) contends that plaintiff's right of inspection must be severely restricted because of the death of his father Spyros P. Skouras in 1971, the holding in the cited case being to the effect that an unexplained delay in prosecuting a claim of an alleged fraudulent conveyance until after the death of the grantee constitutes laches. However, in the case at bar the death of Spyros P. Skouras did not work any prejudice to Admiralty insofar as the mere collating and producing of the information sought by plaintiff is concerned.

Finally, defendant is concerned that plaintiff may use information acquired by him as a result of an inspection of Admiralty's books and records for the purpose of doing harm to Admiralty rather than for his own benefit. However, as stated in 5 Fletcher Cyc. Corporations, Section 2275 (Perm. Ed.1972) "[i]t is clearly the rule of the cases discussing it that the mere possi-

bility of such abuse or misuse is not grounds for any withholding or restriction of the right [of inspection]."

The present record does not, in my opinion, support defendant's present fears that confidential corporate matters will be divulged as a result of the inspection here granted. Plaintiff assured the Court at trial that he would not use any knowledge he might gain, were inspection to be granted, to defendant's detriment. However, upon a showing that plaintiff has breached his commitment and indeed duty not to harm his corporation by improperly using the knowledge gained from the inspection hereby granted, appropriate relief may be sought.

An appropriate form of order may be presented on notice.