THOMAS & BETTS CORPORATION,
Plaintiff,

v.

LEVITON MANUFACTURING
CO., INC., Defendant.

Civil Action No. 14069.

Court of Chancery of Delaware,
New Castle County.

Submitted: Oct. 6, 1995.
Decided: Dec. 19, 1995.

Thomas R. Hunt, Jr. and David J. Teklits, of Morris, Nichols, Arsht & Tunnell, Wilmington; and Scott A. Edelman and Kathrin Wanner, of Milbank, Tweed, Hadley & McCloy, New York City, for Plaintiff.

David C. McBride and Bruce L. Silverstein, of Young, Conaway, Stargatt & Taylor, Wilmington; and Kenneth B. Forrest, Ben M. Germana, and Stephen R. Blacklocks, of Wachtell, Lipton, Rosen & Katz, New York City, for Defendant.

## OPINION

JACOBS, Vice Chancellor.

This is an action brought by Thomas & Betts Corporation ("Thomas & Betts") pursuant to 8 *Del.C.* § 220, to inspect certain books and records of Leviton Manufacturing Co., Inc. ("Leviton"). Leviton is a Delaware corporation engaged in the business of manufacturing electronics and electrical wiring devices. Thomas & Betts is a New Jersey corporation listed on the New York Stock Exchange and that is also engaged in the electronics business. Thomas & Betts owns a 29% interest in Leviton, represented by a combination of Leviton Class A Common Stock, Class B Common Stock and Preferred Stock.

On February 8, 1995, Thomas & Betts delivered to Leviton a formal demand to inspect a detailed list of Leviton's books and records for four purposes. First, Thomas & Betts seeks a stockholder list to communicate with Leviton stockholders on matters of mutual concern regarding the corporation's "underperformance." Second, Thomas & Betts needs the books and records (a) to value its investment; (b) to account properly to its own shareholders for its investment in Leviton; and (c) to investigate allegations of waste and mismanagement on the part of Leviton's directors and officers.

By letter dated February 17, 1995, Leviton rejected Thomas & Betts' demand. Following expedited discovery, this action was tried between June 5 through June 15, 1995. This is the decision of the Court, following post-trial briefing, on the merits of Thomas & Betts' § 220 inspection claims.

### I. FACTS

Both before and after Thomas & Betts became a minority shareholder, Leviton has been a private corporation owned, controlled and operated by the Leviton family. Leviton has two wholly-owned subsidiaries, Pacific Electrorod Company and American Insulated Wire Corporation, that represent about one half of Leviton's consolidated revenue and profits. Leviton's dominant shareholder, President, and Chief Executive Officer is Mr. Harold Leviton, who, together with his wife,

currently holds 76.45% of Leviton Class A (voting) stock in a voting trust of which he is the trustee. Before Thomas & Betts entered upon the scene, all of Leviton's stockholders were members of the Leviton family and affiliated persons. Included in that latter category was Thomas Blumberg ("Blumberg"), Leviton's former Group Vice President, who is married to Harold Leviton's niece.

For several years, Thomas & Betts had expressed an interest in acquiring Leviton. Both companies had shared numerous common distributors, and Thomas & Betts had been a fairly significant Leviton customer. During the summer months in 1993, Kevin Dunnigan, Thomas & Betts' Chief Executive Officer ("Dunnigan"), and Clyde Moore, its President and Chief Operating Officer ("Moore"), met with Harold Leviton to explore possible joint venture opportunities as well as a friendly acquisition of Leviton. No agreement was ever reached, however.

In April 1994, without Harold Leviton's knowledge or authorization, Mr. Blumberg approached Thomas & Betts to explore a possible merger between Leviton and Thomas & Betts, or, alternatively, an acquisition by Thomas & Betts of the Blumbergs' Leviton stock. The Blumberg family owned approximately 29.1% of Leviton's outstanding shares, including 23.55% of Leviton's Class A (voting) stock. Over several confidential discussions, the parties negotiated a sale.

Thomas & Betts wanted to purchase the Blumbergs' interest to establish a "beachhead" toward acquiring all of Leviton. Mr. Dunnigan stated as much to the Blumbergs' financial adviser:

> Our (Thomas & Betts') key driving force is ... to acquire the complete company, and not simply to put Leviton in play so as to achieve a onetime financial gain, which would do little for the long term interests of our shareholders versus the substantial risks we would be taking.

During their negotiations, Blumberg furnished Thomas & Betts with confidential financial information regarding Leviton and its operations. Included were the contents of a twelve month management statement containing non-public financial information (including confidential material disclosing the cost of certain Leviton operations); information concerning the value of Leviton's wholly-owned subsidiary, American Insulated Wire Corporation; a confidential strategic planning document; a corporate personnel data base; updated Leviton income figures; and other information of a similar character derived from internal financial statements of Leviton and its subsidiaries.

Based upon that information, Thomas & Betts calculated a price that it was willing to pay for the Blumbergs' 29.1% minority stock interest. Mr. Dunnigan then recommended that the Board authorize the purchase of the Blumbergs' minority interest. At that time Dunnigan sought Board authorization, he knew that Leviton did not pay dividends and that it did not follow generally accepted accounting principles ("GAAP") in consolidating the quarterly financial statements for Leviton and its wholly-owned subsidiaries. He also knew that Harold Leviton had the controlling stock position in Leviton and that the corporation was run as a privately owned family business. Blumberg did not, nor could he, assure Thomas & Betts that Leviton would change any of its management or accounting policies if Thomas & Betts became a Leviton minority shareholder, and Thomas & Betts did not seek such assurances.

As earlier noted, Thomas & Betts considered the purchase of the Blumbergs' 29.1% interest as a first step towards eventually acquiring all of Leviton. Consistent with that objective, on June 27, 1994, Dunnigan wrote a memorandum advising the Thomas & Betts Board of Directors that:

> In general, the terms of the purchase of the initial interest of 29.1% are a $50 million initial payment in stock ... and when we complete the purchase, we would pay [to Blumberg] up to an additional $20 million depending on the purchase price for the balance of the company.

At a special Board meeting, the directors authorized Mr. Dunnigan to proceed with the Blumberg purchase, as the initial step of an eventual acquisition of Leviton. On July 12, 1994, Thomas & Betts entered into a formal

agreement with the Blumbergs to purchase their 29.1% stock interest for $50 million dollars. The purchase agreement provided that the Blumbergs would be paid an additional $20 million if Thomas & Betts acquired control of, or sold its interest in, Leviton. That same day the purchase was consummated.

The following day, Dunnigan informed Harold Leviton that Thomas & Betts had purchased the Blumbergs' minority interest. At a meeting held at Leviton's offices in Long Island, Dunnigan suggested to Mr. Leviton that the two companies explore certain joint business ventures, as well as a friendly acquisition of Leviton by Thomas & Betts. Harold Leviton rebuffed that suggestion, offering instead to buy out Thomas & Betts' stock position in Leviton.

The revelation that the Blumbergs had sold their 29.1% stock interest to Thomas & Betts came as a complete—and unpleasant—surprise to Harold Leviton. Angered at Thomas Blumberg's disloyalty, Harold Leviton fired him on the spot, then rehired him, and then days later, fired Blumberg (and his children) again, this time permanently.

On July 15, 1994, Thomas & Betts issued a press release announcing that it had purchased the Blumbergs' interest in Leviton and that it intended to account for that investment on an equity basis.[1] To employ equity accounting, Thomas & Betts would need up-to-date financial information regarding Leviton and its subsidiaries.[2]

From July 1994 through February 1995, Mr. Moore of Thomas & Betts and Ralph DeBiasi, Leviton's Group Vice President of Finance ("DeBiasi"), met several times to discuss the new relationship between the two companies. Harold Leviton, who remained upset about Thomas & Betts' unwanted presence as a stockholder, did not participate in those discussions. Included among the matters discussed was the internal financial information to which Thomas & Betts wanted access on a periodic basis.

On October 6, Mr. Dunnigan sent to Thomas & Betts' Board of Directors a memorandum apprising them of his negotiations with Leviton. Mr. Dunnigan stated that he intended to attempt to persuade Harold Leviton to negotiate a possible acquisition of Leviton. One of the contemplated forms of "persuasion" would be a formal demand to inspect Leviton's books and records:

> On the Leviton front, we are moving to the next phase. I will write to Harold Leviton next week to give him a rationale on why it is in everyone's best interests to start a dialogue. *We will follow this up with a legal request to review all the books and records of Leviton which will start either a dialogue or a lawsuit.*

(emphasis added).

On October 17, 1994, Mr. DeBiasi responded to Mr. Dunnigan, reaffirming Harold Leviton's unalterable position that he was not interested in pursuing a negotiated acquisition of Leviton.

Near the end of October, Messrs. DeBiasi and Moore met again, and agreed that Leviton would furnish its annual financial statement and its unaudited quarterly reports to Thomas & Betts. After the meeting, Mr. Moore then asked that that information be provided earlier than had been previously agreed. He also requested that the unaudited quarterly financials be "prepared in accordance with [GAAP] consistently applied." Mr. DeBiasi responded that the reporting dates that Thomas & Betts was requesting came sooner than the dates to which Leviton had agreed, and well before the dates on which Leviton had promised to furnish that same information to its own creditors. Mr.

---

1. "Equity accounting" is a method of financial reporting whereby an investor initially records its investment in the investee at cost. Thereafter, the investor adjusts the carrying amount of the investment to recognize the investor's proportionate share of the investee's net earnings or losses, which are included in the determination of the investor's net income. Dividends received from an investee reduce the carrying amount of the investment.

2. Thomas & Betts had provided Leviton a draft of its press release. When Leviton's Vice President of Finance reviewed the press release, he proposed that Thomas & Betts delete the reference to equity accounting, and advised Thomas & Betts that Leviton would not assist it in that regard.

DeBiasi also told Mr. Moore that although Leviton generally follows GAAP in preparing its annual accounting statements, it did not utilize GAAP in preparing its quarterly statements and that Leviton would not change its normal accounting practice to accommodate Thomas & Betts' demands.

On November 7, 1994, Harold Leviton and Mr. Dunnigan met to discuss their dispute over access to Leviton's books and records. The meeting was not amicable. Harold Leviton remained highly displeased over Thomas & Betts' surreptitious purchase of the Blumbergs' Leviton shares, and he refused to change Leviton's accounting practices to accommodate his new shareholder. Mr. Dunnigan also suggested that Leviton pay a dividend, to which Harold Leviton is said to have replied:

I have no intention of paying a dividend. And I intend to make your investment in the Leviton Manufacturing Corporation . . . a worthless piece of paper.

After the November 7 meeting, Thomas & Betts began pursuing more actively its demand to inspect Leviton's books and records. In December 1994, Mr. Moore approached Mr. DeBiasi and asked for certain financial records to which Thomas & Betts claimed that it was entitled, and that Thomas & Betts claimed it needed to protect its investment in Leviton. Ultimately, Leviton refused to provide Thomas & Betts with the documents it requested.

On February 8, 1995, Mr. Moore, on behalf of Thomas & Betts, delivered to Mr. DeBiasi, as a representative of Leviton, a formal demand to inspect the following Leviton books and records:

1. Leviton's stockholder list,
2. minutes of Leviton shareholder and directors meetings as well as written consents,
3. audited financial statements for Leviton and its subsidiaries,
4. internal financial statements for the current fiscal year provided on a monthly basis,
5. tax returns filed for Leviton and its subsidiaries,
6. organizational charts for Leviton and its subsidiaries,
7. documents relating to interested party transactions between Leviton or its subsidiaries and its shareholders, directors or officers,
8. documents relating to "key man" life insurance policies taken out by Leviton,
9. material contracts between Leviton and its subsidiaries,
10. documents relating to Leviton leases for real estate or equipment.

One week later, on February 16, 1995, Mr. Dunnigan wrote to Harold Leviton personally, offering to purchase the balance of the company's stock for $250 million, net of expenses. Under that proposal Harold Leviton would become a member of Thomas & Betts' Board of Directors, and would also end up as Thomas & Betts' largest individual stockholder. However, Dunnigan's February 16 offer also concluded with a cryptic threat of litigation if the offer were refused:

You are forcing us down a road where given a choice, I am sure neither of us wants to go. Often, once this process gets started, it ends up with consequences that were never intended. Watch!—It won't be long before the lawyers, the government and the courts are completely in charge, and in the end neither you nor I will have much say in the outcome. There will be only victims, but it won't be the lawyers.

Leviton formally rejected Thomas & Betts' claims for inspection, as well as its acquisition offer, on February 17, 1995. On February 27, 1995, Thomas & Betts filed this action to compel inspection of Leviton's books and records pursuant to 8 *Del.C.* § 220.

## II. THE DEMAND TO INSPECT LEVITON'S STOCKHOLDER LIST.

 I first address the plaintiff's demand to inspect Leviton's stockholder list. Thomas & Betts claims that its purpose in seeking that list is to communicate with other Leviton shareholders on a variety of issues relating to their interests as Leviton shareholders. Those issues include Leviton's

"underperformance," alleged waste and mismanagement by its officers and directors, Leviton's failure to pay a dividend, and whether the other shareholders might have an interest in buying or selling Leviton stock. Leviton defends on the basis that because the demand letter lacks specificity, Thomas & Betts has not adequately established a proper purpose.

8 *Del.C.* § 220 entitles a shareholder of a corporation to:

> ... inspect for any proper purpose the corporation's stock-ledger, a list of its stockholders, and its other books and records, and to make copies or extracts therefrom. A proper purpose means a purpose reasonably related to such person's interest as a stockholder ...

8 *Del.C.* § 220(b). To become entitled to inspect a corporation's shareholder list, a shareholder must make a demand under oath that states a purpose reasonably related to its interest as a shareholder. 8 *Del.C.* § 220(b); *Northwest Industries, Inc. v. B.F. Goodrich Co.*, Del.Supr., 260 A.2d 428 (1969); *Warner LeRoy v. Hardwicke Companies, Inc.*, Del.Ch., C.A. No. 7023, Longobardi, V.C., 1983 WL 21022 (February 16, 1983). A shareholder seeking to inspect a shareholder list is presumed to have a proper purpose, and the corporation has the burden to prove that the shareholder's purpose is improper. *See* 8 *Del.C.* §§ 220(b) and (c); *Levy v. Recognition Equipment Inc.*, Del.Ch., C.A. No. 6802, Brown, C., Letter Op. at 6, 1982 WL 17856 (June 23, 1982). Any doubts will be resolved in favor of the statutory inspection right. *Compaq Computer Corp. v. Horton*, Del.Supr., 631 A.2d 1, 3 (1993) (citations omitted). Where, however, the stated purpose is "so indefinite, doubtful, uncertain or vexatious as to warrant denial of the right of inspection," the presumption may be rebutted. *See Compaq Computer Corp. v. Horton*, 631 A.2d at 5; *State ex rel. Miller v. Loft, Inc.*, Del.Super., 156 A. 170 (1931); *State ex rel. Linihan v. United Brokerage Co.*, Del.Super., 101 A. 433, 437 (1917).[3]

■ I am satisfied that Thomas & Betts has established a proper purpose for seeking inspection of Leviton's shareholder list. As a minority shareholder, Thomas & Betts cannot be assured that Leviton will ever generate an income stream sufficient to provide an adequate return on Thomas & Betts' $50 million investment. Therefore, Thomas & Betts' only likely options will be either to acquire sufficient additional shares to obtain a controlling interest, or sell its minority interest in Leviton to someone else. Because there will be no significant public market for a minority stock position in a private corporation that does not pay dividends, the only likely potential purchasers of Thomas & Betts' minority interest would be Leviton's existing shareholders. If only for that reason, Thomas & Betts would be entitled to inspect a shareholder list in order to communicate with those potential purchasers. Accordingly, Thomas & Betts' stated purpose for inspecting Leviton's shareholder list—to learn the identity of, and contact, Leviton's shareholders to explore either acquiring their shares or selling its (Thomas & Betts') Leviton shares to them—is proper. *Mite Corporation v. Heli–Coil Corp.*, Del.Ch., 256 A.2d 855, 856 (1969).

■ The plaintiff having stated a proper purpose, the burden then rests upon the corporation to prove that the purpose is improper. *See Mite Corporation v. Heli–Coil Corp.*, 256 A.2d at 857. Leviton asserts that it has met that burden because the demand letter lacks specificity, and because that defect was not cured in the depositions or at trial. However, in the depositions, at trial, and in its post-trial memoranda, Thomas & Betts did articulate and establish its purpose with specificity. *See E.L. Bruce Co. v. State ex rel. Gilbert*, Del.Supr., 144 A.2d 533 (1958); *Mite Corp. v. Heli–Coil Corp., supra.* Therefore, any arguable technical deficiency in Thomas & Betts' demand letter was cured. *See Skouras v. Admiralty Enterprises, Inc.*, Del.Ch., 386 A.2d 674, 678 (1978).

---

**3.** The shareholder's purpose must be pled with sufficient specificity to enable the Court to determine whether the stated purpose is related to his or her interest as a shareholder. Thus, a statement that the shareholder intends to communicate with other shareholders, without more, is insufficient. *See Northwest Industries, Inc. v. B.F. Goodrich Co.*, 260 A.2d at 429.

Accordingly, Thomas & Betts will be entitled to inspect Leviton's list of Class A common stockholders, Class B common stockholders, and Preferred stockholders, since Thomas & Betts owns shares of each class. I now turn to the plaintiff's claim of entitlement to inspect Leviton's books and records.

### III. THE DEMAND TO INSPECT LEVITON'S BOOKS AND RECORDS.

Thomas & Betts advances three purposes for seeking to inspect Leviton's books and records: (i) to value its investment in Leviton, (ii) to account properly for that investment on its own balance sheets and earnings statements, and (iii) to investigate possible waste and mismanagement. Leviton defends on two grounds: (a) Leviton is a privately-held corporation and would be harmed if Thomas & Betts is given access to Leviton's books and records; and (b) none of Thomas & Betts' stated purposes for seeking inspection is factually or legally *bona fide*.

■ Where the subject of the demanded inspection are the corporation's books and records (as distinguished from its stockholder list), the shareholder has the burden of establishing a proper purpose. *CM & M Group, Inc. v. Carroll;* Del.Supr., 453 A.2d 788, 792 (1982); *Ostrow v. Bonney Forge Corp.,* Del.Ch., C.A. No. 13270, Allen, C., Mem.Op. at 27–28, 1994 WL 114807 (Apr. 6, 1994). The purpose must not be adverse to the corporation's interest. *Skoglund v. Ormand Industries, Inc.,* Del.Ch., 372 A.2d 204, 207 (1976). The Court will compel production only of those books and records that are "essential and sufficient" for the shareholder to effectuate his or her purpose. *Helmsman Management Services, Inc. v. A & S Consultants, Inc.,* Del.Ch., 525 A.2d 160, 167 (1987) (citing *Neely v. Oklahoma Publishing Company,* Del.Ch., C.A. No. 5293, Brown, V.C., 1977 WL 2563 (Aug. 15, 1977); *State ex rel. Rogers v. Sherman Oil Co.,* Del.Super., 117 A. 122 (1922)).

### A. The Defense That Thomas & Betts Will Abuse Leviton's Confidential Information.

Before addressing the merits of Thomas & Betts' inspection claims, the Court first considers Leviton's threshold defense, which is common to all those claims. Leviton contends that disclosure of the information Thomas & Betts seeks would be detrimental, because Leviton is a privately held corporation that has an interest in maintaining the confidentiality of its financial information. Leviton contends that Thomas & Betts would use the information to harm Leviton, including disclosing it to a third party that could use the information to Leviton's detriment. Leviton asks this Court to conclude, in this instance, that Leviton's privacy rights outweigh Thomas & Betts' interest as a shareholder in inspecting Leviton's books and records.

■ Any judicially compelled disclosure of a corporation's non-public information in a § 220 action could be argued as posing some risk to the corporation. *See Thorpe v. CERBCO, Inc.,* Del.Ch., C.A. No. 11713, Allen, C., 1993 WL 443406 (Oct. 29, 1993). Circumstances could arise where a privately held corporation would have an exceptionally strong interest in maintaining the confidentiality of its financial information. *See Carroll v. CM & M Group,* Del.Ch., C.A. No. 6351, Marvel, C., Letter Op. at 6, 1981 WL 7626 (Sept. 24, 1981), *aff'd in part and rev'd in part on other grounds,* Del.Supr., 453 A.2d 788 (1982) (*"Carroll I"*); *Stroud v. Grace,* Del.Supr., 606 A.2d 75, 89 (1992). However, that risk will not normally operate to bar the statutory inspection right, and in any event no such compelling circumstances have been established here. On the contrary, Leviton has offered no evidence to support its claim that Thomas & Betts would use the information to Leviton's detriment. Leviton asserts that because it and Thomas & Betts are both in the electronics business, granting inspection relief would harm Leviton because Thomas & Betts is a competitor. However, Mr. DeBiasi's uncontroverted testimony was that Thomas & Betts and Leviton were not competitors in any significant way.

Leviton's contention that Thomas & Betts would disclose this information to a third party is also unsupported. Thomas & Betts is now a substantial shareholder of Leviton.

Leviton has not demonstrated that Thomas & Betts would act to harm its own interest. Moreover, Thomas & Betts has offered to inspect Leviton's books and records subject to a confidentiality agreement, which, in my view, is a reasonable way to address Leviton's privacy concerns.[4]

Therefore, the Court rejects Leviton's threshold defense, and turns to Thomas & Betts' purposes for seeking inspection.

### B. Thomas & Betts' Purpose To Investigate Possible Waste And Mismanagement.

The first of Thomas & Betts' stated purposes is to investigate possible waste and mismanagement. Thomas & Betts contends that Leviton's financial performance is substandard, because Leviton pays no dividends, has a poor cash flow, and has higher-than-average overhead expenses. Those circumstances, Thomas & Betts argues, constitute sufficient reason to suspect waste and to justify further inquiry. Thomas & Betts also contends that the record suggests that (a) Leviton has paid for the Leviton family's personal expenses, including its use of the company's accounting firm for tax and estate planning purposes; (b) Leviton has been overcompensating its officers and directors at the shareholders' expense; and (c) Leviton's lease agreements with members of the Leviton family are self-dealing transactions. On that basis, Thomas & Betts claims, it is entitled to inspect Leviton's wholly-owned subsidiaries' books and records to investigate these allegations.

Leviton responds that Thomas & Betts' waste and mismanagement claims are so lacking in record support that they cannot justify permitting it to inspect Leviton's, or its subsidiaries', books and records. For the reasons now stated, I agree.

Investigating possible waste and mismanagement is a proper purpose under 8 Del.C. § 220. See Nodana Petroleum Corp. v. State, Del Supr., 123 A.2d 243, 246 (1956); Skouras v. Admiralty Enterprises, Inc., Del. Ch., 386 A.2d 674, 678 (1978). Where that is the purpose, however, the demanding shareholder has a greater-than-normal evidentiary burden, because the shareholder must adduce evidence from which a credible possibility of mismanagement and waste may be inferred. Ostrow v. Bonney Forge, Mem.Op. at 31; Helmsman Management Services, Inc., 525 A.2d at 166; Neely v. Oklahoma Publishing Company, supra. I conclude that Thomas & Betts has failed to adduce specific evidence of waste and mismanagement that warrants going forward with a § 220 inspection.

Thomas & Betts bases most of its suspicions upon hearsay statements attributed to Thomas Blumberg during the negotiations leading to the purchase of the Blumberg shares. Those statements are said to concern allegedly irregular management practices that he observed while employed at Leviton. Because Blumberg did not testify at the trial, the Court is asked to disregard the testimony attributed to him as hearsay. Those statements are hearsay. See D.R.E. 801(c); Del.Ch.R. 43. But even if the hearsay character of the Blumberg statements would not bar their use for purposes of establishing the possibility of mismanagement, because of Blumberg's significant financial interest that is strongly tied to Thomas & Betts,[5] I do not regard the statements as sufficiently reliable to create a credible inference of waste and mismanagement. Because Thomas & Betts has not adduced any other evidence of possible mismanagement, insofar as its inspection purpose rests on that ground it fails for lack of record support.

---

4. Leviton suggests (but has not demonstrated) that because Thomas & Betts is a public corporation, it may be legally required to disclose some of the confidential information derived from the books and records inspection. That concern finds no support in the record and is purely speculative.

5. Thomas Blumberg and the Blumberg family stand to gain $20 million dollars if Thomas & Betts sells its shares to a third party or acquires

control of Leviton. In either event, Blumberg's interest is tied to Thomas & Betts' ability to either become a majority shareholder or divest its shares in Leviton. Thus, the Blumbergs have a significant financial interest in helping Thomas & Betts achieve either goal—an interest enhanced by the fact that Thomas & Betts employed Blumberg after Leviton acrimoniously terminated him.

Nor has Thomas & Betts adduced any other evidence sufficient to create a credible inference of waste and mismanagement. Thomas & Betts had no specific knowledge of any impropriety, illegality or irregularity in the Leviton leases, and it proffered no credible evidence to support that claim. Thomas & Betts' effort to predicate its waste and mismanagement claims upon Leviton's financial performance similarly fails for lack of credible evidence. That a corporation's performance may fall below an industry norm does not, in and of itself, evidence waste or mismanagement. Moreover, when Thomas & Betts acquired the Blumberg's Leviton stock, it knew that Leviton paid no dividends. That policy has not changed. Finally, Thomas & Betts has not adduced sufficient evidence from which to infer that Leviton has improperly compensated its directors and officers. In short, the record discloses that Thomas & Betts' waste and mismanagement claims are factually unsupported and highly opportunistic.[6]

Accordingly, Thomas & Betts' request for inspection relief to investigate possible waste and mismanagement will be denied.[7]

### C. *Thomas & Betts' Equity Accounting Purpose.*

Next, Thomas & Betts seeks to inspect Leviton's and its wholly-owned subsidiaries' books and records to enable Thomas & Betts to account for its Leviton stock. Thomas & Betts argues that as a public company it must properly account to its public shareholders for its $50 million investment. Based upon its (highly disputed) interpretation of the applicable GAAP standards, Thomas & Betts contends that its investment should be accounted for under the equity method, and points out that its outside auditor, KPMG Peat Marwick, agrees. Finally, Thomas & Betts claims that its ability to account by the equity method will be severely limited unless it is granted the information it seeks. I conclude that none of these contentions has merit.

■ First, Thomas & Betts' equity accounting purpose is premised not upon its status as a Leviton shareholder, but, rather, upon its relationship *inter sese* with its own shareholders. Therefore, the purpose Thomas & Betts seeks to further is individual, and not one relating to its status as a Leviton shareholder. *See Catalano v. T.W.A.*, Del. Ch., C.A. No. 5352, Hartnett, V.C., 1977 WL 2576 (Nov. 3, 1977); *Lynn v. EnviroSource, Inc.*, Del.Ch., C.A. No. 11770, Chandler, V.C., 1991 WL 80242 (May 10, 1991), *aff'd*, Del. Supr., 608 A.2d 728 (1991). For that reason alone, Thomas & Betts' stated "equity accounting" purpose is legally improper.

■ Second, Thomas & Betts' claimed inability to utilize the equity accounting method without § 220 relief is a problem of its own making. At the time it purchased the Blumberg shares, Thomas & Betts had certain of Leviton's internal financial statements, and it knew that those statements did not conform to GAAP standards. Leviton consistently employed—both before and after Thomas & Betts became a stockholder—the "cost method" of accounting.[8] There is no

---

6. Thomas & Betts displays true *chutzpah* by first praising Leviton's business performance and offering Harold Leviton a seat on its board of directors, and then, only after its offer to purchase Leviton was rebuffed, suggesting to this Court that Harold Leviton is guilty of waste and mismanagement.

7. That ruling is equally applicable to the request *to inspect the books and records of Leviton's* wholly-owned subsidiaries. Thomas & Betts has provided no evidence that the subsidiaries are being used to commit a fraud or other inequity, or that they lack an independent business purpose. *See Skouras v. Admiralty Enterprises*, 386 A.2d at 681.

8. The "cost method" is a method of accounting presentation whereby an investor initially records its investment at cost. The cost method allows the investor to recognize only the dividends actually distributed to it from the investee's net earnings after the date of acquisition. Dividends are considered to be a return on investment and are recorded as a reduction of the cost of the investment. Unlike the equity accounting method, an investor that utilizes the cost method of accounting will be unable to include in its earnings its proportionate share of the investee's net earnings. Rather, the adjustment will be limited to the net dividends actually distributed by the investee entity and received by the investor. Thus, the equity method would be more favorable to Thomas & Betts than the cost method, since under the equity method, Thomas & Betts' reported earnings would increase, but under the cost method they would not.

contention or testimony that Leviton is required by law to follow GAAP, or that the cost method of accounting is improper. Thomas & Betts' position boils down to a contention that it would prefer the equity method of accounting. However, a Section 220 action cannot serve as a vehicle to force a corporation to change its accounting practices.[9] A stockholder may not use the 220 action as a means "to invade the corporate board room." *Radwick Pty. Ltd. v. Medical Inc.*, Del.Ch., C.A. No. 7610, Berger, V.C., Mem.Op. at 8, 1984 WL 8264 (Nov. 7, 1984).

Third, the factual *bona fides* of Thomas & Betts' contention that it needs to account for its investment by the equity accounting method, are highly suspect. Mr. Cohen testified that an investor may use the equity accounting method only if it has "the ability to exercise significant influence over [the corporation's] operating and financial policies." Under GAAP there is a *rebuttable* presumption that a shareholder that owns at least 20% of the corporation's stock is able to exert significant influence sufficient to warrant equity accounting. That presumption appears to have been rebutted in this case. Even though Thomas & Betts owns over 29% of Leviton's shares, its influence over Leviton's operations is negligible. Thomas & Betts plays no role in Leviton's management, it has no Board representation, and it does not engage in inter-firm ventures or transactions. Harold Leviton completely dominates Leviton's business policies and activities. The evidence establishes to my satisfaction that Thomas & Betts presently wields no influence over Leviton's operations.

The Court concludes that Thomas & Betts has not met its burden of establishing its claimed need to inspect Leviton's books and records in order to employ the equity method of accounting for its investment in Leviton.

### D. *Thomas & Betts' Valuation Purpose.*

Finally, Thomas & Betts seeks to inspect Leviton's books and records for the purpose of valuing its investment. Thomas & Betts argues three separate valuation grounds. First, it claims that a valuation of its interest is needed to discharge its fiduciary duty to its own shareholders to account accurately for the value of the Leviton investment. Second, it contends that it must value its Leviton shares to facilitate its own long range planning. Third, Thomas & Betts asserts that it needs to value those shares to determine whether or not to acquire additional Leviton shares, sell its minority stake, or take some other action to protect its investment.

■ Thomas & Betts' first purpose—to account to its own shareholders for its Leviton investment—has already been rejected on its merits. See Part III C, *supra*. Repackaging that claim as a "valuation purpose" does not improve it. Thomas & Betts' second stated purpose—to facilitate long range planning—is wholly unspecific, and for that reason alone, is insufficient. *See Weisman v. Western Pacific Industries, Inc.*, Del. Ch., 344 A.2d 267 (1975). In addition, that purpose is internal to Thomas & Betts as a business enterprise, and therefore is improper, as it is unrelated to Thomas & Betts' interest as a shareholder. Therefore, only Thomas & Betts' third stated valuation purpose—to determine whether to buy additional shares, sell its stake, or take other action to protect its investment—is in issue.

■ Leviton challenges the *bona fides* of that purpose. It argues that Thomas & Betts has proffered no evidence of any present intention to sell its Leviton shares. It also argues that Thomas & Betts' sole pur-

---

**9.** Thomas & Betts argues that this Court lacks subject matter jurisdiction to decide whether or not equity accounting for the Leviton investment is appropriate, because its accounting procedures are prescribed by the Securities Exchange Act of 1934, which only the federal courts have exclusive jurisdiction to enforce. *See* 15 U.S.C.A. § 78a, *Standard Power & Light Corp. v. Investment Associates*, Del.Supr., 51 A.2d 572 (1947). The argument is misguided. Jurisdiction is based not upon issues ultimately decided, but

upon the substantive claims for relief being asserted. Here, plaintiff seeks to compel a books and records inspection under § 220 for the purpose of accounting for its Leviton shares. That statutory state law claim is one that this Court has jurisdiction to decide. *See* Wright, Miller & Cooper, *Federal Practice and Procedure* § 3527 (1984). That necessarily empowers the Court also to decide the subsidiary issue of whether a stockholder's preference to use equity accounting is a proper purpose within the meaning of § 220.

pose is to value the company as a whole, and not its 29.1% minority interest, in order to pursue a hostile takeover—a purpose found improper in *BBC Acquisition Corp. v. Durr–Fillauer Medical, Inc.*, Del.Ch., 623 A.2d 85 (1992) ("*BBC Acquisition Corp.*"). In that case this Court denied a shareholder's application to inspect corporate books and records for the stated purpose of valuing its shares, because that stated purpose, while proper on its face, was not in fact the demanding shareholder's true purpose. That is because the demanding shareholder had made a trivial investment (100 shares) solely as a vehicle to seek the target corporation's non-public information to further the shareholder's strategic goal of pursuing a hostile takeover of the corporation.

■ Valuation of a stockholder's investment in a corporation, particularly where the corporation is privately held, has long been recognized as a proper purpose under 8 *Del.C.* § 220. *CM & M Group, Inc. v. Carroll*, Del.Supr., 453 A.2d 788, 792 (1982). Because they do not receive the mandated, periodic disclosures associated with a publicly held corporation, minority shareholders in a privately held corporation face certain unique risks. Such shareholders may, therefore, have a legitimate need to inspect the corporation's books and records to value their investment, in order to decide whether to buy additional shares, sell their shares, or take some other action to protect their investment. *See BBC Acquisition Corp.*, 623 A.2d at 91; *Clark Enterprises, Inc. v. Hollywell Corp.*, Del.Ch., C.A. No. 6554, Brown, V.C., 1982 WL 17855 (Apr. 13, 1982).[10]

That Thomas & Betts became a Leviton shareholder for the purpose of ultimately acquiring corporate control cannot be seriously disputed. The record also establishes that Thomas & Betts' *initial* primary purpose in seeking a books and records inspection was not to value its minority shareholdings, but, rather, to exert pressure on Harold Leviton to negotiate a sale of his controlling interest or, alternatively, the entire company. If that continued to be Thomas & Betts' primary purpose, the analysis could end at this point and inspection relief would be denied summarily. *BBC Acquisition Corp.*, 623 A.2d at 91. However, as matters now stand, the issue is not that simple.

Although Thomas & Betts initially became a stockholder and initially demanded a wide-ranging inspection of Leviton's books and records to further its goal of acquiring Leviton, the circumstances have now changed and as a result, so have Thomas & Betts' primary interests and goals. It has now become crystal clear that Thomas & Betts cannot gain control of Leviton so long as Harold Leviton is its majority stockholder and is unwilling to sell control to Thomas & Betts. As a result, Thomas & Betts is now relegated to the status of a "locked-in" minority stockholder. The question thus becomes whether because of its initial improper purpose Thomas & Betts is entitled to no relief, or whether because of its changed circumstances Thomas & Betts should be permitted to seek the information to which any similarly situated (but non-control-motivated) minority stockholder would be entitled.

In my view, the policy underlying § 220 requires the latter result. That result gives effect to the reality of Thomas & Betts' present position, by recognizing that now that Thomas & Betts' aspiration to gain control has been frustrated, it nonetheless has a legitimate need to value its investment and to have information essential and sufficient for that purpose. That is because Thomas & Betts' principal viable option (other than continuing to hold a $50 million "captive" minority investment in a company that pays no dividend) is to sell its shares. And while Thomas & Betts' control-acquiring motive may give Leviton continued reason to be concerned, that concern is more properly

---

**10.** This Court has recognized on several occasions that because of the absence of a publicly traded market, a shareholder in a closely held corporation has no ability to value his or her shares, yet would need to make an initial valuation, if only to determine whether the shares are marketable, and if so, at what price. *Helmsman Management Serv. v. A & S Consultants*, 525 A.2d at 165, *see also Radwick Pty., Ltd. v. Medical Incorporated*, Mem.Op. at 6–7, *Macklowe v. Planet Hollywood, Inc.*, Del.Ch., C.A. No. 13450, Jacobs, V.C. (Sept. 29, 1994), Mem.Op. at 8, 1994 WL 560804.

addressed by adjusting the scope of relief than by denying relief altogether.

I now turn to the scope of the relief to which Thomas & Betts is entitled.

## IV. *THE SCOPE OF RELIEF*

Thomas & Betts seeks access to several categories of corporate books and records to support its valuation purpose, and claims that all of the demanded categories are essential and sufficient for that purpose. Leviton responds that Thomas & Betts needs no additional books and records, because it already has been furnished sufficient information to have enabled it to determine Leviton's value on two occasions, first to make the Blumberg purchase, and second, to advance Dunnigan's February 16 acquisition proposal. Leviton further argues that the information it has already agreed to provide—its annual audited financial statements and its unaudited quarterly financial statements—are sufficient.

A stockholder's statutory right to compel an inspection of corporate books and records is to be narrowly construed. *Willard v. Harrworth Corp.*, Del.Ch., 258 A.2d 914, 915 (1969); *Catalano v. T.W.A.*, Del.Ch., C.A. No. 5352, Hartnett, V.C., Mem.Op. at 4, 1977 WL 2576 (Nov. 3, 1977). Thomas & Betts has the burden to justify each category of books and records whose production it seeks to have compelled. Only those records that are essential and sufficient will be required. *Helmsman Management Servs. Inc.*, 525 A.2d at 167. In determining the scope of inspection, the Court may consider the information previously furnished by the corporation, as well as the degree of certainty of the stockholder's intent to buy or sell his or her shares in the corporation. *Neely v. Oklahoma Publishing Co.*, Del.Ch., C.A. No. 5293, Brown, V.C., 1977 WL 2563 (June 30, 1977).

I reject Leviton's argument that all relief should be denied because Thomas & Betts was twice able to place a value on Leviton. In both instances, those valuations were based on assumptions predicated on minimal information and made for a different purpose—to buy shares (or, in the second case, control) at the lowest possible price. Because of its position as a buyer, and recognizing the incompleteness of its information, Thomas & Betts used the low end of an extremely wide range of possible values to make both offers. To put it differently, although the information available to Thomas & Betts *as a potential buyer* enabled it to value the Blumbergs' shares at the low end of that range, now that Thomas & Betts is in the position of being *a potential seller,* it legitimately needs more complete information. The fact that Thomas & Betts previously made "low end" valuations of Leviton should not, therefore, bar its statutory inspection right. *See Carroll I.* Thus, the question boils down to what additional information is essential and sufficient for Thomas & Betts to value its investment in Leviton.

As Mr. Moore testified, only certain of the demanded categories relate to Thomas & Betts' valuation purpose. Those categories include the minutes of directors and shareholders' meetings; audited financial statements of Leviton and its subsidiaries; tax returns; transactions between Leviton and its subsidiaries, shareholders or officers; material contracts; and lease agreements.

Having considered the evidence presented, the Court finds only the following documents to be essential and sufficient for Thomas & Betts' valuation purpose, and as to those documents will grant inspection: [11]

— audited financial statements of Leviton for the last three fiscal years (including the current fiscal year), pursuant to item (D) of the demand letter;

— audited financial statements of all direct and indirect Leviton subsidiaries for the last three years (including the current fiscal year), pursuant to item (E) of the demand letter; and

— all federal tax returns filed by Leviton for the last three years, pursuant to item (H) of the demand letter.

The Court also finds the following document categories not to be essential and sufficient for Thomas & Betts' valuation pur-

---

**11.** Those documents shall be in addition to those currently being voluntarily furnished by Leviton.

poses, and as to these categories will deny inspection:

— any and all written consents and minutes of the Leviton Board of Directors meetings for the current year, as well as the three previous years, pursuant to item (B) of the demand letter;

— any and all written consents and minutes of the Leviton shareholders' meetings for the current year, as well as the three previous years, pursuant to item (C) of the demand letter;

— records relating to interested director transactions pursuant to items (J), (K), (L), (M) and (N) of the demand letter;

— material contracts and lease agreements, and real estate agreements, pursuant to items (Q), (R) and (S) of the demand letter;

— internal Leviton financial statements on a monthly basis, for the current fiscal year, pursuant to item (F) of the demand letter;

— internal Leviton financial statements for its direct and indirect subsidiaries on a monthly basis, for the current fiscal year, pursuant to item (G) of the demand letter; and

— books and records regarding "key man" or other life insurance policies, pursuant to items (O) and (P) of the demand letter.

Thomas & Betts has failed to persuade me that the foregoing information is essential to a valuation of Leviton. The audited annual financial statements and quarterly reports of Leviton and its subsidiaries, and the tax returns, should provide Thomas & Betts with all the information it needs. The minutes of the directors and shareholders meetings have not been shown to be essential to a valuation, nor have the monthly financial statements for Leviton and/or its subsidiaries, most or all of which information is captured by the annual (and quarterly) audited statements for the parent company and its subsidiaries. The essentiality of the "key man" and other life insurance policies to a valuation continues to elude the Court, and the demanded information relating to the "self-dealing" transactions between Leviton and its officers, directors, and stockholders appears overbroad and more related to Thomas & Betts' waste and mismanagement purpose than to its purpose of valuing the corporation.

In so concluding, I recognize that in other cases, on different facts, this Court has permitted the inspection of one or more of these document categories for valuation purposes. However, in this case Thomas & Betts' ulterior motive, its history of demanding books and records to create leverage, and the opportunistic overbreadth of its demand, all point to the need for caution. Accordingly, the Court has resolved all reasonable doubts against inspection and has granted relief only as to those document categories whose essentiality appears certain.

## V. CONCLUSION

For the foregoing reasons, the Court finds Thomas & Betts entitled to inspect Leviton's shareholder list, as well as the corporate books and records described above. Counsel shall submit a form of order implementing the rulings made herein.