**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR
(RETIRED, SITTING BY SUPR. CT. ORDER 1,
2025 (JANUARY 8, 2025))

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: September 12, 2024
Date Decided: January 31, 2025

Ethan H. Townsend, Esq.
Aaron P. Sayers, Esq.
McDermott Will & Emery LLP
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801

Philip A. Rovner, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899

Re: *NuVasive, Inc. v. Patrick Miles, et al.*,
C.A. No. 2017-0720-SG

Dear Counsel:

This dispute in its original garb was an action by Plaintiff NuVasive, Inc. ("NuVasive"), a medical device company, against a former fiduciary, Patrick Miles, for committing torts and breaching employment agreements and fiduciary duties by, per Plaintiff, taking actions on behalf of a NuVasive competitor, Alphatec Spine, Inc. ("Spine"), and its parent, Alphatec Holdings, Inc. ("Holdings", together with Spine, "Alphatec").[1] Plaintiff alleged generally that Miles secured a large stake in Holdings without disclosing his investment to NuVasive, joined Alphatec in breach of his employment agreement with NuVasive, and began purloining NuVasive's

---

[1] Verified Compl., Dkt. No. 1.

customers and employees thereafter.[2]  Subsequently, Plaintiff also sought relief against both Holdings and Spine, contending that after Miles joined them, those companies tortiously interfered with NuVasive's contractual relationships with its distributors.[3]

Holdings and Spine moved to dismiss, motions vitiated by Plaintiff's Second Amended Complaint which dropped Spine as a party defendant.[4]  Presumably, Spine was omitted from the Second Amended Complaint because of the likelihood that this Court lacked jurisdiction over Spine, the operating entity.  Spine, according to Defendants, is a California corporation that does no business in Delaware.[5]  Accordingly, NuVasive sued Spine in a California court (the "California Action"), alleging the same factual predicate it had attempted to assert here.  That action has proceeded through trial, with mixed results themselves pending appeal.

Holdings, by contrast, is a Delaware entity.  It sought dismissal from the Second Amended Complaint on grounds of Rule 12(b)(6); contending that as a mere holding company, it had taken no actions for which it could be liable—such actions,

---

[2] *Id.* (alleging breach of contract, breach of fiduciary duty, unfair competition, tortious interference with contractual relations, tortious interference with prospective economic advantage, and fraudulent inducement).

[3] Pl. NuVasive, Inc. First Am. Compl. for Damages, Dkt. No. 105.

[4] Pl. NuVasive, Inc. Second Am. Compl. for Damages, Dkt. No. 234; *see* Defs. Alphatec Spine, Inc. and Alphatec Hldgs., Inc.'s Opening Br. in Supp. of their Mot. to Dismiss, Dkt. No. 117.

[5] Defs. Alphatec Spine, Inc. and Alphatec Hldgs., Inc.'s Opening Br. in Supp. of their Mot. to Dismiss 5–8, Dkt. No. 117.

per Holdings, were taken by individuals acting on behalf of *Spine*.[6] I denied the motion to dismiss in part, on grounds that Holdings' involvement in the alleged tortious competition was an issue of fact best addressed on a trial record.[7] The matter was tried, along with Plaintiff's fiduciary duty claim against Miles. The latter claim was addressed by an earlier decision;[8] remaining for post-trial decision are the claims against Holdings. Holdings' motion to dismiss was denied in part based on allegations in the Second Amended Complaint that Holdings, through its agents, itself committed torts, despite Holdings' contention that those actions were taken by the operating subsidiary, Spine.[9] Based on the record after trial, it is clear to me that Holdings is not the entity that took the actions Plaintiff complains of here. Instead, those actions were taken by employees acting on behalf of Spine, the entity Plaintiff has sued on those grounds in the California Action.

---

[6] Opening Br. in Supp. of Alphatec Hldgs.' Mot. to Dismiss Pl.'s Second Am. Compl. 13–17, Dkt. No. 251. In my August 31, 2020 Memorandum Opinion addressing Holdings' motion to dismiss, I characterized Holdings as a "direct competitor" of NuVasive. *NuVasive, Inc. v. Miles*, 2020 WL 5106554, at *1 (Del. Ch. Aug. 31, 2020). This characterization was not based on a factual finding, but rather Plaintiff's pre-trial allegations. It should not be read as a determination by the Court as to whether Holdings was an active participant in NuVasive's field of business.

[7] *NuVasive*, 2020 WL 5106554, at *8–9, 11. I granted Holdings' motion to dismiss Count IV (unfair competition), Count VI (tortious interference with prospective economic advantage), and Count VIII (aiding and abetting breach of fiduciary duty). *See* Granted (Proposed Order regarding Def. Alphatec Hldgs., Inc.'s Mot. to Dismiss Pl. NuVasive, Inc.'s Second Am. Compl.), Dkt. No. 322.

[8] *NuVasive, Inc. v. Miles*, 2024 WL 3857685 (Del. Ch. Aug. 16, 2024). That result, and relief via damages against Miles, proved unavailable, for reasons not pertinent to this Letter Opinion. Interested readers, if any, may consult that Memorandum Opinion. *Id.*

[9] *NuVasive*, 2020 WL 5106554, at *8–9, 11.

This Court is careful to acknowledge corporate forms—a good portion of our corporate law relies on fidelity to that concept. Of course, this concept can neither be universally nor dogmatically enforced, in equity.[10] In cases where the corporate form is a sham used to procure fraud, equity will act, by "piercing the veil" of the corporate form.[11] But such is not alleged here, and NuVasive has not attempted to justify disregard for the separate existences of Spine and Holding; instead, it argues that Holdings is liable for its actions, independent of Spine. But that is not borne out by a preponderance of the facts of record, which disclose that Holdings is a passive entity that holds subsidiaries, including Spine. Accordingly, there is no basis to find Holdings liable here.

By way of brief background,[12] NuVasive is a medical device company incorporated in Delaware, with its principal place of business in San Diego,

---

[10] As the great Icelandic writer, Halldór Laxness, observed, ultimately "facts refute all doctrines." *See* Annie Dillard, *Hard Times in Ultima Thule*, N.Y. Times: Archives (Apr. 20, 1997), https://archive.nytimes.com/www.nytimes.com/books/97/04/20/bookend/bookend.html. That is perhaps the single piece of philosophy essential to the proper operation of a court of equity.

[11] *See Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Effectively, [to disregard the corporate form] the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.").

[12] This Letter Opinion only contains facts necessary to my analysis. Citations to the parties' joint trial exhibits are referred to by the numbers provided by the parties and cited as "JX __". *See* Parties' Joint Ex. List, Dkt. No. 484. Citations to the parties' stipulated pre-trial order are cited as "PTO ¶ __". Pre-Trial Stipulation and [Proposed] Order, Dkt. No. 484. References to the trial transcripts are cited as "Tr. __:__". 10-2-2023 Trial Tr. – Volume I, Dkt. No. 496; 10-3-2023 Trial Tr. – Volume II, Dkt. No. 497; 10-4-2023 Trial Tr. – Volume III, Dkt. No. 498; 10-5-2023 Trial Tr. – Volume IV, Dkt. No. 499; 10-6-2023 Trial Tr. – Volume V, Dkt. No. 500.

California.[13]  NuVasive develops technologies to treat spinal disease.[14]  Defendant Holdings is a holding company incorporated in Delaware.[15]  Holdings owns four subsidiaries, including Spine.[16]  Spine, which is not a party to this litigation, also develops technologies to treat spinal disease and is one of NuVasive's competitors.[17]  Defendant Patrick Miles is the current President and Chief Executive Officer of Spine, as well as the President and Chairman of Holdings.[18]  On August 16, 2024, I addressed Plaintiff's claim for breach of fiduciary duty against Miles, finding for Miles.[19]  I now find for Defendant Holdings on Plaintiff's remaining claims.

NuVasive sells its products through an exclusive distributor model. Distributors contract with NuVasive for a fixed term, which can only be terminated for cause, during which they may not promote a competitor's products.[20]  The contracts also include post-termination non-competition and non-solicitation restrictions.[21]  Pertinent to this matter are NuVasive's exclusive distributor contracts

---

[13] *NuVasive*, 2024 WL 3857685, at *1.
[14] *Id.*
[15] *Id.*
[16] In addition to Spine, Holdings also owns SafeOp Surgical, Inc., EOS imaging, S.A., and International Holdings. Tr. (Hunsaker) 837:22–839:5; s*ee* JX441 at 0004.
[17] Tr. (Hunsaker) 839:1–5; JX442–JX444.
[18] *NuVasive*, 2024 WL 3857685, at *1. Miles formerly held an executive position and was a member of the Board of Directors of NuVasive. *Id.*
[19] *NuVasive, Inc. v. Miles*, 2024 WL 3857685. Readers may refer to that opinion for a procedural history of this matter. *Id.* at *3.  On September 12, 2024, I held a teleconference and took the remaining claims under advisement.  Tele-Conf. Status before V.C. Sam Glasscock III on 9.12.2024, Dkt. No. 530.
[20] *See, e.g.*, JX53; JX249.
[21] *See, e.g.*, JX53; JX249.

involving Absolute Medical, LLC ("Absolute Medical"), inoSpine, LLC ("inoSpine"), and Rival Medical, LLC ("Rival Medical").

Absolute Medical served as NuVasive's exclusive distributor in Florida.[22] Around October 2017, Spine executives recruited Absolute Medical's owner, Gregory Soufleris, to become a Spine distributor.[23] Shortly after, Spine began negotiating terms for a distributor agreement with Absolute Medical,[24] and began recruiting Absolute Medical sales representatives Dave Hawley and Ryan Miller[25] to join Spine.[26] After notifying NuVasive of his resignation from their partnership,[27] Soufleris incorporated Absolute Medical Systems ("AMS").[28] AMS then executed an Exclusive Dedicated Sales Representative Agreement with Spine.[29] Hawley and Miller resigned from Absolute Medical soon after Soufleris,[30] and executed

---

[22] Dep. of Gregory Soufleris (dated June 8, 2022) 8:25–10:25 [hereinafter "Soufleris"]; JX53.

[23] Soufleris met with Spine executives Craig Hunsaker (Executive Vice President, People and Culture, and General Counsel), Terry Rich (Chief Executive Officer), and Brian Snider (Executive Vice President, Strategic Marketing and Product Development) at Spine's headquarters. JX96; Soufleris 31:22–33:11. Soufleris also met with Miles during this time. JX90.

[24] Negotiations included Hunsaker, Rich, and Jon Allen (Vice President of Commercial Operations). JX97–JX98; JX102–JX103; JX107; JX109; JX484.

[25] Hawley (through his entity Hawleymed, LLC) and Miller (through his entity, Millertime Medical, Inc.) each executed fixed-term agreements with Absolute Medical which included non-competition and non-solicitation provisions extending one year following the end of the agreement's term. JX4–JX5.

[26] Allen flew to Orlando to have dinner with Hawley and Miller. Dep. of David Hawley (dated June 9, 2022) 9:12–14:7 [hereinafter "Hawley"].

[27] JX486.

[28] JX121.

[29] PTO ¶ 16; JX128–JX129.

[30] JX119.

agreements with Spine that assigned them to territory that each had previously covered as Absolute Medical sales representatives for NuVasive.[31]

Kenneth Kormanis and Michael Jones worked as sales representatives for inoSpine, a NuVasive distributor in North Carolina.[32] Beginning in late 2017, Spine executives recruited Kormanis and Jones to join Spine.[33] On or about March 1, 2018, Kormanis and Jones signed agreements with Spine, swapping their territories so that each sales representative covered the others' prior territory.[34]

Rival Medical was a NuVasive distributor in Massachusetts and Rhode Island.[35] Timothy Day owned, and Adam Richard worked for, Rival Medical.[36] In or around February 2019, Miles began recruiting Day to join Spine.[37] On March 29, Day executed a one-year direct employment contract as Spine's "Territory

---

[31] *Compare* JX5 at 0031 (assigning Miller to Seminole, Orange, Volusia, Osceola, Lake, and Brevard Counties), *with* JX122 at 0007 (assigning Miller to Seminole, Orange, Volusia, and Osceola Counties); *compare* JX4 at 0016 (assigning Hawley to Orange County), *with* JX123 at 0007 (assigning Hawley to Orange, Osceola, Seminole, and Volusia Counties).

[32] Dep. of Kenneth Kormanis (dated Feb. 19, 2021) 13:7–16:2 [hereinafter "Kormanis"]; Dep. of Michael Jones (dated Apr. 13, 2021) 15:14–21. Kormanis and Jones each executed agreements with inoSpine to which NuVasive was a third-party beneficiary. JX2; JX156.

[33] Specifically, Rich and Greg Rhinehart (Vice President East) recruited Kormanis and Jones. Dep. of Greg Rhinehart (dated May 25, 2021) 18:18–20:19, 56:9–22, 60:17–61:3; JX152.

[34] JX625 (Spine's agreement with Kormanis's entity, ReAlign Spine, LLC, assigning him to Burke, Cabarrus, Caldwell, Catawba, Gaston, Haywood, Iredell, Mecklenburg, Rowan, and Rutherford Counties); JX624 (Spine's agreement with Jones's entity, Quinn Michael, Inc., assigning him to Guilford, Rockingham, Forsyth, and Stokes Counties); JX159 (Hunsaker listing the territories that Kormanis and Jones must avoid in order to comply with their inoSpine agreements).

[35] JX249.

[36] JX249–JX251.

[37] JX244; JX258–JX260.

Development Manager, Northeast."[38]  The following day, Rival Medical resigned from NuVasive.[39]  Spine executives also recruited Richard, executing an employment agreement with him on or around April 1.[40]

Plaintiff brings claims against Holdings for tortious interference with contractual relations, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violation of the North Carolina Deceptive and Unfair Trade Practices Act ("NCDUTPA").[41]  Notably absent from this litigation is Spine, the entity at the heart of the dispute.  Plaintiff has brought similar claims against Spine in California, alleging that Spine interfered with NuVasive's contractual relationships and violated the FDUTPA and NCDUTPA.[42]  The results after trial in that litigation were mixed,[43] and an appeal is ongoing.  Nevertheless, Plaintiff proceeds against Holdings in Delaware, on the theory that Holdings has itself interfered with NuVasive sales representative and distributor contracts.  Again, Holdings is the sole owner of Spine.

---

[38] JX279.  Under the terms of his contract, his territory included Maine, Vermont, and New Hampshire—but not his former NuVasive territory of Massachusetts and Rhode Island. *Id.*
[39] JX276.
[40] JX263; JX271; JX277–JX278.
[41] PTO ¶ 1.
[42] Transmittal Aff. of Philip A. Rovner in Supp. of Defs.' Post-Trial Br., Ex. 1, Dkt. No. 515.
[43] *Id.*  Specifically, the jury only found that Spine intentionally interfered with NuVasive's contractual rights relating to Kormanis in North Carolina, resulting in one surgeon moving his business to spine. *Id.*  The jury awarded $812,002 in damages. *Id.*

In Delaware, "our corporation law is largely built on the idea that the separate legal existence of corporate entities should be respected."[44] It is of course the case that a parent and its subsidiary can both be liable for their own torts, but "[m]ere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity"[45] and impose liability vicariously. Notably, Plaintiff has not asserted a corporate veil-piercing theory and, thus, may only prevail on its claims by establishing Holdings' direct liability for the alleged conduct. As such, Plaintiff must prove that Holdings' agents engaged in wrongdoing on Holdings' behalf and within the scope of the agents' actual or apparent authority.[46] Upon review of the record, I find that Plaintiff has failed to present sufficient evidence from which I may conclude that Holdings—separate and apart from Spine—may be held liable for Plaintiff's claims.

Based upon the evidence presented, I find that Holdings is a holding company that does not conduct business operations. As mentioned, Plaintiff has not offered direct evidence establishing that Holdings makes or sells spine medical devices, that it engages in the spine medical device business, or that it conducts any business operations whatsoever.[47]

---

[44] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006).
[45] *Skouras v. Admiralty Enters., Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978) (citations omitted).
[46] *See* Restatement (Second) of Agency § 219(1) (Am. L. Inst. 1958).
[47] Instead, Plaintiff points to another proceeding in the Court of Chancery, where Holdings stipulated as fact that it "designs, develops, and markets products for the surgical treatment of

9

Nor does Plaintiff offer sufficient evidence that Holdings was involved in recruitment of sales representatives and directors. Although Holdings approved a distributor inducement plan which ratified the equity component to AMS's agreement,[48] the plan was generic and does not establish that Holdings itself took any action to recruit NuVasive sales representatives, nor that it directed Spine to do so. On the other hand, the record indicates that only Spine, *not Holdings*, contracted with and pays commission to the sales representatives and distributors at the heart of this dispute.[49]

Additionally, I find that the individuals who recruited NuVasive distributors and customers did so solely on behalf of Spine. Plaintiff argues that Holdings should be held directly liable because its past Form 10-Ks include employment agreements showing that it directly employed Miles, Hunsaker, Rich, Allen, and Snider, who were involved in the recruitment of NuVasive sales representatives and distributors.[50]

---

spine disorders." Pl. NuVasive, Inc.'s Opening Post-Tr. Br. 65, Dkt. No. 516. But, as Defendants point out, the fact that Holdings is a medical device company only *through its wholly owned subsidiaries* was not relevant to that case. Defs.' Resp. to Pl.'s Post-Tr. Br. 13–14, Dkt. No. 518 [hereinafter "Def. RB"]. This stipulated fact in another case does not demonstrate, to my mind, that Holdings is anything other than a holding company with no business operations, nor that concepts of estoppel or waiver are implicated.

[48] JX142. The equity involved was that of Holdings.

[49] Tr. (Hunsaker) 844:9–845:6, 846:14–847:10.

[50] JX433 (Miles); JX430 (Hunsaker); JX434 (Rich); JX432 (Allen); JX429 (Snider).

At trial, Hunsaker testified that the employment agreements were mistakenly drafted under Holdings' name.[51] More pertinently, testimony presented at trial demonstrates that, to the extent that executives facially employed by Holdings engaged in the recruitment of sales representatives and distributors, they took those actions entirely on behalf of Spine. I find this testimony credible, in light of the fact that Spine was the entity with commercial operations and products to market.[52]

Plaintiff argues that the fact that Alphatec was sloppy with designations in employment agreements, and other facts that Plaintiff relies on, such as joint or sequential board meetings of the two entities,[53] and testimony that executives did not formally distinguish between the two entities,[54] show Holdings' direct involvement in the alleged misconduct. Plaintiff avers that these facts establish that, when these directors were recruiting sales representatives, they were doing so on behalf of *both* Holdings and Spine, thus establishing Holdings' direct liability.

---

[51] Tr. (Hunsaker) 696:4–7, 843:23–844:8.

[52] Tr. (Miles) 331:2–24 (testifying that his daily operational activities are performed for Alphatec Spine); Tr. (Hunsaker) 844:9–845:6 (testifying that he and Miles acted on behalf of Spine when conducting the activities alleged by Plaintiff); Tr. (Hunsaker) 693:22–694:13 (testifying that "with the exception of my corporate secretary obligations for Holdings, 100 percent of my time was spent in the interest of Alphatec Spine, the operating entity"). That these individuals were acting on behalf of Spine, rather than its non-operating holding company, is bolstered by common sense. For example, as Defendants point out, Allen's title is "Executive Vice President, Commercial Operations," but Holdings has no commercial operations. Def. RB 12; JX432.

[53] JX472–JX473; JX475; JX477–JX478.

[54] *See, e.g.*, Tr. (Hunsaker) 693:22–695:7 (testifying that Spine and Holdings do not maintain records for allocating time between the two entities).

11

The facts presented do not demonstrate to me that this was the case, in light of the overarching fact that Spine, not Holdings, was the operating entity.

Further, Plaintiff appears to argue that the Spine executives' interest in creating shareholder value for their parent company establishes Holdings' direct liability. But this proves too much; an owner of equity presumably always wishes his entities' assets to wax. Regarding this truism as sufficient to impose liability on a parent for the action of its subsidiaries would vitiate respect for the corporate form.[55] Holdings owned the equity in Spine, and thus was interested in its performance precisely as any other stockholder would be in the profitability of the entity it owned.

In general, the facts on which Plaintiff attempts to rely would be of greater relevance if Plaintiff was attempting to pierce the corporate veil and hold Holdings liable for the actions of Spine. Again, that is not a part of this case, and in any event, there is no basis in the record before me to show Holdings is a sham entity or used the corporate form to defraud.

---

[55] The same can be said for the truism that the actions of a subsidiary's agent in furtherance of the subsidiary in turn drive the parent's share value. That Spine executives understood this core feature of corporate structure does not by itself establish that they were therefore acting on behalf of Holdings. *See, e.g.*, Tr. (Hunsaker) 695:13–696:3.

I find that only agents acting for Spine took the actions Plaintiff believes should lead to liability; Plaintiff has pled that Spine is liable in the California Action, which remains in litigation.

For the foregoing reasons, I find for Defendant Holdings as to Plaintiff's claims of tortious interference with contractual relations (Count V), violation of the FDUTPA (Count IX), and violation of the NCDUTPA (Count X). The parties should submit a form of order consistent with this Letter Opinion.

Sincerely,

*/s/ Sam Glasscock III*

Vice Chancellor (retired, sitting by Supr. Ct. Order 1, 2025 (January 8, 2025))